13:12:40

```
                IN THE UNITED STATES DISTRICT COURT

                   FOR THE DISTRICT OF DELAWARE


   JAZZ PHARMACEUTICALS, INC.,   )
                                 )
            Plaintiff,           )
                                 ) C.A. No. 21-691(MN)
   v.                            )
                                 )
   AVADEL PHARMACEUTICALS PLC,   )
   et al.,                       )
                                 )
            Defendants.          )


                      Friday, July 30, 2021
                      2:00 p.m.
                      Teleconference


                      844 King Street
                      Wilmington, Delaware



   BEFORE:   THE HONORABLE MARYELLEN NOREIKA
             United States District Court Judge




   APPEARANCES:


                  MORRIS NICHOLS ARSHT & TUNNEL LLP
                  BY:  JEREMY TIGAN, ESQ.

                  -and-

                  QUINN EMANUEL URQUHART & SULLIVAN
                  BY:  DOMINIC A. CERRITO, ESQ.
                  BY:  FRANK CALVOSA, ESQ.
                  BY:  GABRIEL P. BRIER, ESQ.

                              Counsel for the Plaintiff
```

```
 1    APPEARANCES CONTINUED:

 2

 3              McCARTER & ENGLISH
                BY:  DANIEL SILVER, ESQ.
 4
                -and-
 5
                LATHAM & WATKINS
 6              BY:  KENNETH SCHULER, ESQ.

 7              -and-

 8              DURIE & TANGRI
                BY:  DARALYN DURIE, ESQ.
 9

10                        Counsel for the Defendants

11

12                      - - - - - - - - - - -
```

13:50:54   13

13:51:19   14          THE COURT:  Good afternoon, counsel.  Who is
13:51:23   15   there, please?
14:00:53   16          MR. TIGAN:  This is Jeremy Tigan with Morris
14:00:56   17   Nichols on behalf of Jazz.  I am joined by Dominic Cerrito,
14:01:01   18   Frank Calvosa and Gabriel Brier of Quinn Emanuel.
14:01:03   19   Mr. Cerrito will speak for us today.
14:01:06   20          THE COURT:  Good afternoon.
14:01:08   21          MR. SILVER:  Good afternoon, Your Honor.  Dan
14:01:11   22   Silver from McCarter & English on behalf of the Avadel
14:01:14   23   defendant.  And I'm joined by Kent Schuler from Latham &
14:01:17   24   Watkins and Daralyn Durie from Durie Tangri.
14:01:21   25          THE COURT:  Good afternoon to you as well.

```
14:01:22   1                    So I have the proposed scheduling order.  One
14:01:27   2    thing that I am going to say before we begin is this is a
14:01:32   3    public transcript.  We have had calls asking for access
14:01:37   4    information for this call.  I know that some letters were
14:01:40   5    filed under seal.  So I'm going to ask that we try to
14:01:43   6    discuss the issues without referring to confidential
14:01:47   7    information so that we don't need to shut down the call to
14:01:50   8    others.  If it turns out that we can't do this without
14:01:53   9    addressing confidential information, then we will have to
14:01:58  10    close the line.  But I want to see if we can try and do it
14:02:03  11    without doing that before we make that decision.
14:02:08  12                    So we have the schedule that was proposed and it
14:02:15  13    seems like everyone agrees on all of the issues in the
14:02:21  14    schedule other than the preliminary injunction stuff.  Is
14:02:26  15    that right?
14:02:29  16                    MR. CERRITO:  Your Honor, Nick Cerrito from
14:02:31  17    Quinn Emanuel on behalf of Jazz.  That is essentially
14:02:35  18    correct, Your Honor.  I think we have come together on most
14:02:37  19    issues.  There may be one or two other nits on the list, but
14:02:41  20    I don't think anything of substance.
14:02:43  21                    THE COURT:  If there are nits, can you point
14:02:46  22    them out so we can make sure we address it?  I didn't see
14:02:50  23    it, but I might have missed it.
14:02:52  24                    MR. SILVER:  I think we resolved everything
14:03:00  25    except for that paragraph 2 dealing with the preliminary
```

```
14:03:04  1    injunction stuff.
14:03:05  2              THE COURT:  Okay.  So with that, let's get the
14:03:09  3    normal scheduling stuff out of the way.  I'm going to give
14:03:14  4    you the dates for the issues that needed to be filled in.
14:03:19  5              For claim construction hearing, that will be
14:03:23  6    August 2nd of 2022 at 10:00 a.m.  Any Daubert motions will
14:03:34  7    be due on July 7th, 2023.  And those will be briefed
14:03:39  8    according to the local rules.  The pretrial conference will
14:03:45  9    be October 23rd, 2023, at 4:30.  And we will have a five-day
14:03:53 10    bench trial beginning on October 30th, 2023, and we'll
14:03:59 11    decide how many days you actually get closer to trial, but
14:04:03 12    for now we will schedule it for five days.
14:04:08 13              Any issues with any of that before we get to the
14:04:11 14    preliminary injunction issue?
14:04:13 15              Mr. Cerrito?
14:04:15 16              MR. CERRITO:  Not from plaintiff, Your Honor.
14:04:16 17              THE COURT:  Mr. Silver?
14:04:18 18              MR. SCHULER:  I don't believe so, Your Honor.
14:04:25 19    Ken Schuler from Latham & Watkins.  We have no issues with
14:04:29 20    any of those.
14:04:29 21              THE COURT:  All right.  So now we have the issue
14:04:32 22    on the preliminary injunction.  Let me hear -- I read the
14:04:38 23    excerpts, the short statements that I got, but I'll hear
14:04:42 24    briefly from the parties and then I have a few questions.
14:04:46 25              So Mr. Cerrito, what is the likelihood that
```

14:04:50  1      we're going to need a PI here?
14:04:54  2              MR. CERRITO:  I'm not sure, Your Honor.
14:04:57  3      Unfortunately I can't be more definitive than that.  It's
14:05:01  4      possible, certainly.  Under what context and in what
14:05:06  5      circumstance, I'm not sure.  Sitting here today obviously
14:05:09  6      approval is an issue.  Launching is another issue.  What we
14:05:14  7      discover may dictate, assuming we're going to get their NDA
14:05:19  8      relatively quickly and then relative correspondence goes
14:05:23  9      along with it.  You know, I just don't know.  That's why we
14:05:28 10      have -- the parties have been talking for a little, I guess
14:05:31 11      over a month or so now about this issue.  And we have been
14:05:35 12      seeking the NDA as soon as possible, an action which is
14:05:42 13      electronically filed and it's a matter of pushing a button,
14:05:46 14      so that could have been and should have been provided as
14:05:50 15      quickly as possible in my view.  At that point we would have
14:05:53 16      had hopefully a better view and a better course to present
14:05:57 17      to the Court today.  Unfortunately we are where we are.
14:06:01 18              You know, I think our schedule does permit
14:06:04 19      plenty of time before -- I have to be careful now because I
14:06:10 20      don't want to say anything I don't want to say.  Your Honor
14:06:14 21      is aware of certain dates in the documents that may or may
14:06:18 22      not be coming up.  I'm trying to be careful, Your Honor.  So
14:06:24 23      --
14:06:24 24              THE COURT:  My understanding is you're saying
14:06:27 25      that your schedule for a preliminary injunction would

```
14:06:32  1    provide everyone with time to deal with the preliminary
14:06:35  2    injunction before it became emergent that the Court do so.
14:06:41  3    Is that your position?
14:06:43  4              MR. CERRITO:  That certainly is, Your Honor.
14:06:45  5    Like we put in our schedule, upon service of our contention
14:06:50  6    interrogatories -- I'm sorry, our contentions, we would then
14:06:53  7    have a meet and confer with defendants and want one, to see
14:06:59  8    if PI was even necessary and if so what are the parameters
14:07:03  9    of that, and provide the Court with an update and
14:07:06 10    potentially a schedule if we decide, in fact, to go forward.
14:07:09 11              THE COURT:  Let me hear from the defendant,
14:07:12 12    Mr. Silver, Mr. Schuler, why can't we just get the NDA's
14:07:17 13    produced?  We have a local rule in this district that says
14:07:21 14    if there is no protective order in place or no
14:07:23 15    confidentiality order in place, you produce things attorneys
14:07:29 16    eyes only.  And I know we have to deal with the one expert.
14:07:33 17    But why is this -- why are we talking about producing an NDA
14:07:40 18    in a month from now?
14:07:44 19              MR. SCHULER:  Your Honor, it's Mr. Schuler.
14:07:46 20              I think the date has been agreed to.  I think
14:07:48 21    it's just the provision --
14:07:49 22              THE COURT:  Yes, but it hasn't been agreed to by
14:07:52 23    me if you all want a schedule that deals with a preliminary
14:07:58 24    injunction.  So my question isn't the agreed upon dates, my
14:08:02 25    question is why isn't it being produced?
```

```
14:08:05   1              MR. SCHULER:  I think that in our view, Your
14:08:08   2   Honor, that we are looking at what they characterize as
14:08:13   3   Mr. Cerrito says he doesn't exactly know, but it's at least
14:08:18   4   something that it's enough of a substantial possibility that
14:08:21   5   they have raised it.  Our view is the principles that should
14:08:25   6   govern the situation should be fourfold.  One is that we
14:08:28   7   should have the basis -- by the way, the date of
14:08:31   8   October 15th, Your Honor, is not confidential.  That's
14:08:34   9   publicly known.  So that date is in the complaint.  So our
14:08:41  10   view is that they should file shortly after that date, if
14:08:46  11   there is approval.
14:08:48  12              The second principle is there should be
14:08:53  13   reciprocal discovery disclosure.  It shouldn't be one sided.
14:08:57  14              Third, there should be time for expert
14:08:59  15   discovery.  And lastly and importantly the schedule should
14:09:02  16   afford the Court adequate time to consider the issues.
14:09:04  17   That's how we came about a comprehensive schedule that
14:09:08  18   included not just the production of the NDA and the other
14:09:12  19   materials, also reciprocity getting to our overarching
14:09:17  20   thought we have roughly, I'm going to say roughly because of
14:09:20  21   the concern you noted at the outset, roughly eighteen weeks
14:09:24  22   to deal with the situation and it occurs to us that that
14:09:27  23   Jazz proposal would have effectively erased ten of those
14:09:32  24   weeks.  Our view is that if we adopt a schedule that we
14:09:35  25   have, it will be productive because the discovery we're
```

```
14:09:41   1   going to seek goes to validity and infringement and will be
14:09:45   2   undertaken in any event.
14:09:46   3              THE COURT:  Mr. Schuler, what I didn't
14:09:48   4   understand from your proposal was how that gives me any time
14:09:54   5   to decide the issues.
14:09:57   6              MR. SCHULER:  Well, to be honest, Your Honor,
14:10:00   7   that was my biggest concern was to make sure you had
14:10:03   8   adequate time.  And if it is not adequate, then I think the
14:10:06   9   parties need to go back and negotiate even shorter deadlines
14:10:10  10   --
14:10:10  11              THE COURT:  I mean, I got to tell you, I don't
14:10:13  12   see how you have given me a day, so how much time do you
14:10:19  13   think you have given me?
14:10:24  14              MR. SCHULER:  As I understood it, up to -- I'm
14:10:29  15   sorry, Your Honor, I think I can't because of public -- I
14:10:35  16   don't want to misstate something, but I think that the date
14:10:40  17   that we put in was the entire month, and perhaps it was
14:10:51  18   stated in a way that I understand what you're saying, that
14:10:55  19   you would --
14:10:56  20              THE COURT:  Let me just tell you this, if you
14:10:58  21   guys all get as much time as you profess to need, you're not
14:11:02  22   getting an opinion from me on the timeline that you have
14:11:08  23   given me given what I have on my calendar in that month.  So
14:11:12  24   let's go back and think, rethink this.
14:11:18  25              This is what I'm thinking, okay?  I don't know
```

```
14:11:22   1      if a preliminary injunction -- first of all, I think that
14:11:26   2      the defendants need to produce the NDA as soon as possible,
14:11:32   3      and I don't mean August 27th, I mean now.  They need to
14:11:41   4      produce it.  They can produce it under local Rule 26.2 and I
14:11:46   5      think that it is fair for the plaintiff to be allowed one
14:11:49   6      expert to review the material in the NDA.
14:11:55   7                  So I think also that the parties need to agree
14:11:59   8      to an expedited exchange of infringement and validity
14:12:03   9      contentions, and whatever other discovery is needed, so
14:12:09  10      you're going to have to talk to about that.  If a
14:12:11  11      preliminary injunction is necessary, the parties need to let
14:12:13  12      me know by October 18th.  So that means that anything that
14:12:19  13      is done by the public October date needs to be shared.  If
14:12:25  14      it's not, if the response from the FDA is not public it
14:12:30  15      needs to be shared so that a determination can be made by
14:12:34  16      October 18th.  My preliminary injunction motion with support
14:12:38  17      needs to be filed by October 22nd.  Hold on, let me just
14:12:44  18      look at the date here.  Yes, needs to be filed by
14:12:48  19      October 22nd.  And we're going to brief it under the
14:12:51  20      Delaware local rules, that means the response in
14:12:55  21      fourteen days and a reply seven days later.  And we're going
14:12:58  22      to have a hearing, if we need one, on November 23rd,
14:13:02  23      starting at 10:00 a.m.
14:13:05  24                  So if a preliminary injunction is necessary, you
14:13:08  25      guys need to get done what you need to get done by October.
```

14:13:15 1   As for the likelihood of success because I have given you
14:13:19 2   kind of constrained timing and we all have constrained time,
14:13:22 3   for likelihood of success, we're going to limit the issues
14:13:26 4   in the preliminary injunction so that I can rule on it
14:13:29 5   expeditiously.  Plaintiff, that means you are going to need
14:13:33 6   to pick your best claim.  I know there are four patents and
14:13:36 7   about 80 claims.  You're going to have to take your best
14:13:40 8   one.
14:13:41 9              Defendant, you can assert non-infringement, but
14:13:43 10  if you are challenging nonvalidity, you too are going to
14:13:48 11  have to pick your best validity defense to assert.  So
14:13:51 12  that's what I'm thinking.
14:13:53 13             Thoughts?  Plaintiff?
14:13:55 14             MR. CERRITO:  Yes, Your Honor, Mr. Cerrito from
14:13:58 15  Quinn Emanuel on behalf of Jazz.
14:14:02 16             I'm not assuming and maybe I am incorrect that
14:14:06 17  this is not somehow a preclusive order, meaning if my client
14:14:14 18  chooses not to file on the 22nd we're not precluded at any
14:14:18 19  point in time in the future from filing.
14:14:20 20             THE COURT:  I don't know about that,
14:14:22 21  Mr. Cerrito, because certainly if we're talking about the
14:14:25 22  particular dates here, then, yes, you would be precluded.
14:14:30 23  If this is the circumstance where it turns out that, you
14:14:32 24  know, I'm just going to throw out dates that, you know, in
14:14:35 25  October of this year that the defendant finds out that it

```
14:14:44  1   has to go back and start from scratch and we wind up three
14:14:48  2   years out you needing a PI, that's different, but if you're
14:14:53  3   suggesting that you're not going to file on October 22nd,
14:14:56  4   but you might file on November 10th, that's not going to
14:14:59  5   work.
14:14:59  6              MR. CERRITO:  Well, Your Honor, I certainly
14:15:02  7   don't want duress on the Court or me for that, that's what I
14:15:07  8   was suggesting.  The way it was written, they use the word
14:15:14  9   "shall", perhaps it's a due process problem.  My client has
14:15:18 10   a right to file, perhaps at the detriment of themselves, but
14:15:22 11   this Court not having time to deal with it, but you know,
14:15:26 12   there is a lot of things that can come up in discovery, we
14:15:29 13   have other patents in prosecution that should be issued
14:15:32 14   shortly, so I just want to make sure.  And if Your Honor is
14:15:37 15   saying otherwise, then I guess we may need to submit a brief
14:15:43 16   to Your Honor, I believe, because I actually had this issue
14:15:48 17   come up in another case this year in which we argued that
14:15:53 18   due process.
14:15:53 19              THE COURT:  Mr. Cerrito, let me tell you this,
14:15:56 20   if you are saying your client may want to file in November,
14:15:59 21   then what I can tell you is in looking at the likelihood of
14:16:02 22   success, in looking at the likelihood of success the fact
14:16:06 23   that it was delayed is going to be found against you.  And
14:16:09 24   if you don't give me enough time to decide it and they want
14:16:12 25   to come on the market while the motion is pending, that's
```

```
14:16:16   1    going to be to your client -- that's going to be a risk your
14:16:20   2    client takes.
14:16:21   3               So you need to tell me, though, you need to tell
14:16:24   4    me in advance, I don't just want a preliminary injunction
14:16:28   5    motion plopping down on my plate when I have no time to deal
14:16:33   6    with it, I want to know it's coming.  So you need to give me
14:16:37   7    advanced notice that you're going to file it.  If you can't
14:16:40   8    file it by the 22nd and you say, but Your Honor, we're going
14:16:43   9    to be filing it, you better make that known because if you
14:16:47  10    don't file it by the 22nd, chances of you getting a decision
14:16:51  11    that will actually be a grant of a preliminary injunction if
14:16:56  12    that's what your client wants, they're going down and down
14:16:59  13    and down.  So I'm not going to say you can't file it after.
14:17:02  14               MR. CERRITO:  Well --
14:17:03  15               THE COURT:  Stop.  I'm not going to say you
14:17:05  16    can't file it after that date, but you are going to waive
14:17:09  17    due process, but I'm also telling you it might be pointless
14:17:12  18    to file it after that date if I do not have time to deal
14:17:16  19    with it.  Do you understand?
14:17:17  20               MR. CERRITO:  I totally understand, Your Honor.
14:17:19  21    And that's not what I was suggesting.  They may not get
14:17:21  22    approval on the date that they said they would get it, so if
14:17:27  23    they don't, and Your Honor knows this from practice, there
14:17:29  24    may be a whole host of instances, I would not know whether
14:17:35  25    it's a five-day delay or a five-month delay, so we will
```

```
14:17:39   1   update you as much as possible, but there are circumstances
14:17:42   2   in which there would not be approval if my client would not
14:17:46   3   want to file.
14:17:47   4                THE COURT:  I understand.  But then there is a
14:17:49   5   risk to that, so you guys need to be in communication so
14:17:53   6   that we can address it and that I know when it's coming
14:17:56   7   because, you know, I have three trials a week scheduled for
14:18:00   8   parts of next year, and sitting in a preliminary injunction
14:18:06   9   hearing and ruling on it, you're going to have a hard time
14:18:08  10   with that.  So I'm setting up a time to do it.  If you can't
14:18:13  11   do it, then let me know on the 18th that no preliminary
14:18:17  12   injunction is coming.  If you think one is going to come
14:18:19  13   later, you better tell me or else it's going to be a problem
14:18:22  14   for you.
14:18:23  15                Any other issues that you wanted to raise?
14:18:33  16                MR. SILVER:  Your Honor, this is Dan Silver --
14:18:37  17                MR. CERRITO:  One other issue with regard to the
14:18:45  18   NDA.  We also obviously ask for correspondence, we ask for a
14:18:50  19   seven-day turn around on any new correspondence that
14:18:54  20   obviously will go --
14:18:56  21                THE COURT:  That all makes sense to me.  That
14:18:59  22   should be done.
14:19:01  23                MR. CERRITO:  Thank you, Your Honor.
14:19:02  24                THE COURT:  All right.
14:19:03  25                MR. SILVER:  Your Honor, this is Dan Silver.  We
```

hear you loud and clear on the NDA and the correspondence of production. We will expedite that. However, I don't know if Your Honor has had a chance to look at our counterclaims, I don't know if they're fresh in Your Honor's mind, but we have a specific concern with the plaintiff here trying to patent -- use existing patent applications to try to cover our product and so this is a case where we were very concerned about getting in place a protective order with the prosecution bar and an FDA prosecution bar so that our confidential information isn't being used against us. And I understand --

    THE COURT: Then Mr. Silver, you should then already have sent them a draft of a protective order if it's that much of a concern. So if you guys want to do that, that's great. The local rules says that it can only be used for purposes of this litigation, and so for these purposes, I guess that's going to have to do. You have to do until you get a protective order, but if it's that important to your client, I suggest you get a draft out there. The provisions that you suggest sound reasonable, but I don't know how reasonable they are if there is no draft out there, so you better get talking about that.

    MR. SILVER: Thank you, Your Honor. We'll send them a draft next week. Thank you.

    THE COURT: Anything else?

```
14:20:33  1                MR. CERRITO:  Not from plaintiffs, Your Honor.
14:20:36  2                THE COURT:  All right.  I do have one question
14:20:39  3   and that is I see I have a motion in front of me, and there
14:20:43  4   is a stipulation on the briefing on the delisting.  What's
14:20:48  5   the practical implication of delisting that patent?
14:20:53  6                MR. CERRITO:  From plaintiff's position, Your
14:20:55  7   Honor, there is -- we believe, we don't know because we
14:20:58  8   haven't seen the documentation yet, that the FDA is
14:21:01  9   requiring them, them being Avadel to certify against the one
14:21:06 10   patent that deals with the method of treatment.  They have
14:21:09 11   yet to do that.  I believe that motion is intended, if the
14:21:13 12   patent was, assuming this issue is ripe and they have
14:21:17 13   standing, assuming it was delisted then they wouldn't have
14:21:21 14   to certify, but if it's not and the FDA has told them they
14:21:24 15   have to as a condition to approval, then of course they
14:21:27 16   would have to certify and all this discussion of PI goes
14:21:30 17   away because the thirty-month stay kicks in.
14:21:33 18                As Your Honor may not know, this is a sodium
14:21:36 19   oxalate product, it's called the date rape drug basically
14:21:40 20   and there is a restricted distribution system involved.  My
14:21:43 21   client cannot believe that any system would be approved
14:21:46 22   without a restricted distribution system put in place and as
14:21:50 23   a result we believe the FDA has told them they have to
14:21:54 24   certify, but they have filed this motion in an attempt to
14:21:58 25   circumvent that.
```

| | |
|---|---|
| 14:21:58 1 | THE COURT: Let me ask you this. The briefing, |
| 14:22:01 2 | the stipulation I just got now says the briefing isn't going |
| 14:22:05 3 | to be done until September. I need to understand, there is |
| 14:22:09 4 | no way I am going to turn to that briefing, that motion |
| 14:22:13 5 | between September and October. So I guess I need to hear |
| 14:22:20 6 | from defendant, is that really going to be -- preclude any |
| 14:22:25 7 | approval if I don't delist it by October? |
| 14:22:32 8 | MR. SCHULER: No, no, Your Honor, the rationale, |
| 14:22:35 9 | the rationale for the motion has more to do with their claim |
| 14:22:39 10 | that they're entitled to an automatic injunction under the |
| 14:22:43 11 | Hatch Waxman Act. |
| 14:22:47 12 | MR. CERRITO: Your Honor, I apologize -- sorry. |
| 14:22:50 13 | THE COURT: Could we also -- wait. Hold on. My |
| 14:22:53 14 | court reporter is not able to discern whose voice is whose, |
| 14:22:59 15 | so let me ask each time you begin speaking if you say your |
| 14:23:04 16 | name. So I don't know if that was Mr. Silver or |
| 14:23:08 17 | Mr. Schuler, but you were speaking. |
| 14:23:09 18 | MR. SCHULER: I'm sorry, Your Honor, that was |
| 14:23:11 19 | Mr. Schuler and I believe Mr. Cerrito wanted to speak next. |
| 14:23:16 20 | MR. CERRITO: Yes. I'm sorry to interrupt. |
| 14:23:18 21 | THE COURT: Go ahead. |
| 14:23:19 22 | MR. CERRITO: Your Honor, I guess I would -- |
| 14:23:21 23 | sorry, Mr. Cerrito on behalf of Jazz. |
| 14:23:24 24 | I'm simply pointing out our situation on that. |
| 14:23:27 25 | Let's play that out for a second. The FDA says you have to |

```
14:23:31   1    certify for approval, they say okay, we'll certify then the
14:23:34   2    motion may be ripe and Your Honor's decision whether it's
14:23:37   3    today or six months from now if it is to delist, then the
14:23:41   4    stay would simply go away and we proceed accordingly.  If
14:23:45   5    Your Honor's decision is that it is appropriate, then there
14:23:51   6    is nothing for this Court to do beyond making that decision.
14:23:54   7    The criticality of that decision in the next weeks or months
14:23:58   8    is not as vital as everyone thinks.
14:24:04   9               THE COURT:  Okay.  All right.  So then I'll
14:24:06  10    grant the stipulation for the extension.  And I will ask
14:24:14  11    that you all submit a revised scheduling order.  Do that by
14:24:22  12    the end of next week, and include the dates that I have
14:24:28  13    given you on this and the limitations of any preliminary
14:24:32  14    injunction.
14:24:32  15               And just so we're clear, to the extent that a
14:24:36  16    preliminary injunction is filed at some point later than
14:24:42  17    October 22nd because, you know, there are good reasons for
14:24:45  18    that, the other limitations that I imposed such as the
14:24:52  19    plaintiff would need to take its best claim and defendant if
14:24:57  20    it's challenging validity, take its best validity defense,
14:25:03  21    they would still be enforced as would saying that any
14:25:06  22    preliminary injunction motion unless there is an order from
14:25:09  23    me would need to be briefed under the Delaware local rules.
14:25:15  24    Understood?
14:25:17  25               MR. CERRITO:  Yes, Your Honor.
```

```
14:25:19  1              MR. SCHULER:  Yes, Your Honor.
14:25:20  2              THE COURT:  Okay:  With that, I will say
14:25:23  3    good-bye and everyone have a good weekend.
          4              (Teleconference concluded at 2:25 p.m.)
          5
          6              I hereby certify the foregoing is a true and
               accurate transcript from my stenographic notes in the proceeding.
          7
          8                              /s/ Dale C. Hawkins
                                      Official Court Reporter
          9                              U.S. District Court
         10
         11
         12
         13
         14
         15
         16
         17
         18
         19
         20
         21
         22
         23
         24
         25
```