# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JAZZ PHARMACEUTICALS, INC., <br><br> Plaintiff, <br><br> v. <br><br> AVADEL CNS PHARMACEUTICALS, LLC, <br><br> Defendant. | C.A. No. 21-691-MN |

**OPENING BRIEF IN SUPPORT OF DEFENDANT'S RENEWED MOTION FOR**
**<u>PARTIAL JUDGMENT ON THE PLEADINGS</u>**

# TABLE OF CONTENTS

I.     INTRODUCTION ........................................................................................................1

II.    NATURE OF THE PROCEEDINGS AND SUMMARY OF ARGUMENT....................2

III.   LEGAL STANDARD..................................................................................................4

IV.   THE '963 PATENT IS NOT PROPERLY LISTED IN THE ORANGE BOOK AND SHOULD BE DELISTED ...................................................................................6

     A.    The '963 Patent Is Improperly Listed Because It Does Not Claim A Method ................... 6

     B.    Even Under Jazz's Proposed Construction The '963 Patent Should Be Delisted Because It Does Not Recite A Method Of Using A Drug .................................................. 9

     C.    The Court Should Issue An Order Directing Jazz To Request That The FDA Delete The '963 Patent From The Orange Book .......................................................... 11

V.    CONCLUSION..........................................................................................................11

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Bayer Schering Pharma AG & Bayer HealthCare Pharms., Inc. v. Lupin, Ltd.*,
  676 F.3d 1316 (Fed. Cir. 2012) .................................................................................................. 5, 8

*Caraco Pharm. Labs. Ltd. v. Novo Nordisk AS*,
  566 U.S. 399 (2012) ................................................................................................... 4, 5, 9, 11

*Cronos Techs., LLC v. Expedia, Inc.*,
  No. 13-1538-LPS, 2015 WL 5234040 (D. Del. Sept. 8, 2015) ................................................... 7

*In re Lantus Direct Purchaser Antitrust Litig.*,
  950 F.3d 1 (1st Cir. 2020) .................................................................................................. 8, 9, 10

*Intellectual Ventures I LLC v. AT&T Mobility II LLC*,
  235 F. Supp. 3d 577 (D. Del. 2016) ............................................................................................ 7

*Jazz Pharm., Inc. v. Amneal Pharm. LLC*,
  895 F.3d 1347 (Fed. Cir. 2018) ................................................................................................... 3

*Minnesota Lawyers Mut. Ins. Co. v. Ahrens*,
  432 Fed. App'x 143 (3d Cir. 2011) ............................................................................................. 5

**STATUTES**

21 C.F.R. § 314.53(b) .................................................................................................................. 5, 7

21 U.S.C. § 355(b)(1)(A)(viii) ..................................................................................................... 1, 5

21 U.S.C. § 355(b)(1)(A)(viii)(I-II) ..................................................................................... 5, 7, 8, 9

21 U.S.C. § 355(c)(2) ....................................................................................................................... 8

21 U.S.C. § 355-1(f)(8) ................................................................................................................. 10

I.       **INTRODUCTION**

Avadel CNS Pharmaceuticals, LLC ("Avadel") respectfully renews its motion for partial judgment on the pleadings for its counterclaim seeking delisting of Jazz's U.S. Patent No. 8,731,963 (the "'963 patent") from the FDA's Orange Book.[1]  In its original Rule 12(c) motion, Avadel explained why the '963 patent does not meet the requirements for Orange Book listing because it does not recite "a method of using [a] drug," 21 U.S.C. § 355(b)(1)(A)(viii), and instead claims "systems" that are ineligible for inclusion in the Orange Book.  Jazz opposed Avadel's motion on the grounds that deciding whether the '963 patent was directed to a system or a method was a claim construction dispute that was inappropriate for resolution at that stage of the case.[2]  The Court agreed that the resolution of this dispute should await claim construction.

Since then, the FDA has required Avadel to certify to the '963 patent.  FT218, the subject of Avadel's New Drug Application ("NDA"), is a novel, once-nightly treatment for narcolepsy, and is a significant improvement over Jazz's currently available twice-nightly products that require narcoleptic patients to wake up in the middle of the night and take a second dose.  The '963 patent's improper listing in the Orange Book is preventing the FDA approval and ensuing launch of FT218.  Now that the parties' briefing on claim construction is well underway, Avadel brings this renewed motion so that this issue can be resolved once the Court has addressed claim construction, and FDA approval for FT218 may proceed without further delay.  If the Court adopts Avadel's

---

[1] The FDA's Approved Drug Products with Therapeutic Equivalence Evaluations (the "Orange Book") provides a list of patents that the holder of a New Drug Application ("NDA") believes cover the active ingredient, formulation, or method of using the drug product covered by the NDA.

[2] Jazz also opposed Avadel's original 12(c) motion on the grounds that it was not ripe.  The Court rejected that argument, and there is no question that the dispute is ripe now, as the FDA has required Avadel to certify against the '963 patent.

1

proposed construction and rules that the '963 patent claims are directed to systems, there is nothing else to decide, and Avadel's motion should be granted.

Furthermore, although Jazz previously tried to suggest that its claim construction position would be that the '963 patent claims are to a "method of using Xyrem" itself, D.I. 43 at 9, that is not the construction Jazz now proposes. Rather, Jazz asserts that the "'963 patent claims methods of *using a computer-implemented system* to safely *distribute* gamma-hydroxybutyrate for treatment of a narcoleptic patient." D.I. 110 at 6.³ Even under that construction, the '963 patent is not properly listed in the Orange Book. A method of using a system for distribution is not a "method of *using [a] drug*," as the statute requires. Thus, under either parties' proposed constructions, delisting is the only proper result.

Accordingly, Avadel respectfully requests that the Court promptly require Jazz to request that the '963 patent be removed from the Orange Book.

## II.     NATURE OF THE PROCEEDINGS AND SUMMARY OF ARGUMENT

This is not a typical Hatch-Waxman case. D.I. 11 at 1. Avadel is not an ANDA applicant seeking to market a generic version of a brand name drug. *Id*. Rather, Avadel filed an NDA for its revolutionary *once-nightly* sodium oxybate formulation, FT218, that stands to improve the lives of patients who otherwise are unable to ever sleep through the night. *Id*. Jazz's *twice-nightly* sodium oxybate formulation, XYREM®, which has been on the market for nearly two decades, requires patients to wake up in the middle of the night to take a second dose. *Id*. at 1-2. Avadel's once-nightly formulation of sodium oxybate fills a significant, unmet need for a sleep disorder treatment that will provide patients with an uninterrupted night's sleep. *Id*. at 2.

---

³ All emphasis added unless otherwise noted.

In part because Avadel's FT218 product is a new drug rather than a generic version of Jazz's XYREM® product, Avadel did not initially file a Paragraph IV certification against any of Jazz's Orange Book-listed patents for XYREM. D.I. 1, Exhibit F at 163. Of the seven patents Jazz has accused Avadel of infringing in this litigation, only the '963 patent is listed in the Orange Book and therefore is the only asserted patent that could trigger the statutory stay of FDA approval. *See* 21 U.S.C. § 355(c)(3)(C); D.I. 1 at ¶ 28. The FDA recently required that Avadel certify to the '963 patent, and that certification now lies in the way of Avadel obtaining FDA approval for its novel drug formulation.

The '963 patent is directed to a system for implementing a risk management procedure called a REMS ("Risk Evaluation and Mitigation Strategy") to distribute a drug like sodium oxybate. D.I. 1 at ¶ 30. The FDA requires a REMS to manage the risk associated with the prescription of sodium oxybate drug products because of their potential for misuse as a dangerous "date rape" drug, among other things. D.I. 1 at ¶ 29.[4]

Avadel previously moved under FEDERAL RULE OF CIVIL PROCEDURE 12(c) for judgment on the pleadings that the '963 patent is not properly listed in the Orange Book because its claims are directed to a system, not a method, and thus do not cover a drug or method of using a drug. D.I. 21. The Court denied that motion, holding that it was premature because it raised a claim construction dispute regarding whether the '963 patent claims are directed to systems, as Avadel contends, or methods, as Jazz contends. D.I. 55 at 5-6. Now that the parties have exchanged their proposed constructions as well as opening and responsive claim construction briefs, Avadel renews

---

[4] Prior to this litigation, the PTAB invalidated claims 24, 26, and 27 of the '963 Patent, along with all claims of six other issued patents in the family. Only claims 1-23, 25, and 28 of the '963 patent remain. D.I. 21, Exhibit A, *Amneal Pharm. LLC v. Jazz Pharm., Inc.*, IPR2015-01903, Paper 31, Final Written Decision at 3 (Mar. 22, 2017), *aff'd, Jazz Pharm., Inc. v. Amneal Pharm. LLC*, 895 F.3d 1347, 1363 (Fed. Cir. 2018).

3

its motion so that the Court may decide this issue as promptly as possible once the Court rules on the proper construction of the '963 patent claims. Indeed, as explained below, Avadel's motion should be granted regardless of the resolution of the claim construction dispute because the '963 patent claims do not cover a method of *using a drug*, as required by the statute for listing in the Orange Book, under either parties' proposed construction.

Expeditious resolution of this dispute is critical for Avadel and its prospective patients. Unless the '963 patent is delisted, the statutorily-mandated stay triggered by Jazz's assertion of the '963 patent will prevent Avadel from launching its product until the expiration of the '963 patent in June 2023, almost a year from now. Such an outcome would be devastating not only to Avadel, which has no other currently marketed products that can fund its operations, but also to narcolepsy patients waiting for a drug that will allow them to have an uninterrupted night's sleep.

Because the claims of the '963 patent do not, as a matter of law, cover a drug or method of using a drug under either parties' proposed construction, Avadel respectfully requests that this Court grant judgment on the pleadings on its counterclaim seeking delisting of the '963 patent, and issue an order mandating that Jazz promptly request that the FDA remove the '963 patent from the Orange Book.

### III.   LEGAL STANDARD

The FDA maintains a list of patents that an NDA holder contends cover the active ingredient, formulation, or method of using the drug product that is the subject of the NDA. *Caraco Pharm. Labs. Ltd. v. Novo Nordisk AS*, 566 U.S. 399, 405-406 (2012). This list is provided in the "Orange Book" maintained by the FDA. *Id*.

The Hatch-Waxman Act recites two requirements for a patent to qualify for Orange Book listing. Initially, the patent must be one for which "infringement could reasonably be asserted if a person not licensed by the owner of the patent engaged in the manufacture, use, or sale of the

drug." 21 U.S.C. § 355(b)(1)(A)(viii). If that requirement is satisfied, then the statute also requires that the patent claim one of the following three categories of subject matter: "a drug substance (active ingredient)," "a drug product (formulation or composition)," or "a method of using such drug for which approval is sought or has been granted in the [patent holder's NDA]." 21 U.S.C. § 355(b)(1)(A)(viii)(I-II); *see also* 21 C.F.R. § 314.53(b).

The "FDA does not make a determination as to whether particular patents should be listed in the Orange Book." *Bayer Schering Pharma AG & Bayer HealthCare Pharms., Inc. v. Lupin, Ltd.*, 676 F.3d 1316, 1324-25 (Fed. Cir. 2012). As a result, in the late 1990's, Congress observed that many brand NDA holders were "exploiting this statutory scheme to prevent or delay the marketing of generic drugs" by improperly listing patents in the Orange Book that did not meet the requirements set out by the Hatch-Waxman Act. *Caraco*, 566 U.S. at 408. Congress responded to these abuses by creating a counterclaim for drug manufacturers to obtain a judgment directing a brand to correct or delete certain patent listings blocking the FDA's approval of another drug. *Id.* at 408-409.[5]

Under Third Circuit law, judgment on the pleadings pursuant to Rule 12(c) is appropriate where "the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." *Minnesota Lawyers Mut. Ins. Co. v. Ahrens*, 432 Fed. App'x 143, 147 (3d Cir. 2011) (internal quotations omitted). Under 21 U.S.C. § 355(c)(3)(D)(ii)(I), the remedy for improper listing of a patent in the Orange Book is "an order requiring the brand to 'correct or delete' its patent information." *Caraco*, 566 U.S. at 420.

---

[5] *Caraco* cites to 21 U.S.C. § 355(j)(5)(C)(ii)(I) as the source of the above-referenced counterclaim for ANDA applicants. This motion relies on 21 U.S.C. § 355(c)(3)(D)(ii)(I), which is a parallel provision that applies to 505(b)(2) NDA applicants. Because the two parallel portions of the statute use the same substantive language, *Caraco's* analysis applies equally here.

## IV. THE '963 PATENT IS NOT PROPERLY LISTED IN THE ORANGE BOOK AND SHOULD BE DELISTED

The '963 patent is not properly listed in the Orange Book because it does not claim a drug substance, drug product, or method of using a drug, as required by statute. Jazz has never asserted that the '963 patent claims a drug substance or drug product—and it plainly does not. Thus, the parties' only dispute is whether the '963 patent recites a "method of using a drug." As explained below, the '963 patent does not claim a method at all, and therefore should not have been listed in the Orange Book. And even if the Court agrees with Jazz that the '963 patent claims are methods, Jazz's proposed construction is "methods of using a computer-implemented system to safely distribute gamma-hydroxybutyrate for treatment of a narcoleptic patient," D.I. 110 at 6, not "methods of using a drug." Accordingly, the '963 patent should be delisted under either of the parties' proposed constructions.

### A. The '963 Patent Is Improperly Listed Because It Does Not Claim A Method

As Avadel proposed in the Joint Claim Chart and will argue in the Joint Claim Construction Brief, the claims of '963 patent are system claims, not method claims. Independent claim 1 of the '963 patent is directed to a "computer implemented *system*" and recites numerous components of that system, such as "computer memories," a "computer database," and a "data processor" that can be configured to implement certain functionality to protect against misuse of sodium oxybate. D.I. 11 at 41, ¶ 28; *see also* D.I. 1, Exhibit A at claim 1. Absent from the '963 patent are any steps to be performed as is required of method claims. Jazz's use of functional language to describe the recited components of the system does not convert the systems claims into method claims.

Resolution of claim construction in Avadel's favor is dispositive of the present motion. If the Court finds that the asserted claims of the '963 patent are system claims, then the patent cannot be properly listed in the Orange Book because it does not claim a "drug substance," "drug product,"

or "method of using [a] drug" as required by the Hatch-Waxman Act.  21 U.S.C. § 355(b)(1)(A)(viii)(I-II).  As discussed above, Jazz previously only contended that the claims of the '963 patent are directed to a method of using a drug.  Avadel has proposed that these claims are directed to systems.  Should the Court adopt Avadel's proposed construction, the Court can and should resolve this issue by granting Avadel's counterclaim directing Jazz to remove the '963 patent from the Orange Book.  *Intellectual Ventures I LLC v. AT&T Mobility II LLC*, 235 F. Supp. 3d 577, 588 (D. Del. 2016) ("[T]he Court may take notice of and rely on its claim construction opinion without converting Defendant's [12(c)] Motion into a motion for summary judgement."); *Cronos Techs., LLC v. Expedia, Inc.*, No. 13-1538-LPS, 2015 WL 5234040, at *3 (D. Del. Sept. 8, 2015) ("Since the Court's claim constructions are now part of the law of the case, they generally need to be applied at all further stages of the case….").

The only other argument Jazz previously raised was that it was "required" to list the '963 patent in the Orange Book.  D.I. 43 at 9.  But that argument was based on an incomplete reading of the relevant statute.  Jazz asserted that NDA holders are required under the Hatch-Waxman Act to file with the FDA "the patent number and expiration date of each patent for which a claim of patent infringement could reasonably be asserted…and that…claims a method of using such a drug for which approval is sought or has been granted in the [NDA]." *Id*. at 8.  Jazz then argued that it was required to list the '963 patent in the Orange Book because the approved labelling scheme for XYREM requires a REMS, which is covered by the '963 patent. *Id*.  However, Jazz's argument ignores the second half of the statute that also requires that the patents listed claim a "drug substance," "drug product," or "a method of using [a] drug." 21 U.S.C. § 355(b)(1)(A)(viii)(I-II); *see also* 21 C.F.R. § 314.53(b).  The statute requires both conditions be satisfied.

7

Therefore, whether Jazz could reasonably assert infringement of the '963 patent was merely a necessary condition, but not itself sufficient, for proper listing in the Orange Book. Rather, as explained above, the '963 patent must also cover a drug substance, a drug product, or a method of using a drug. *Id*. The '963 patent is not directed to any of these categories and accordingly is not required (or permitted) to be listed in the Orange Book. In fact, the Hatch-Waxman Act is clear that "[p]atent information that is not the type of patent information required by subsection (b)(1)(A)(viii) *shall not* be submitted" upon approval of an NDA application. 21 U.S.C. § 355(c)(2).

And of course, the FDA does not police whether particular patents are properly listed in the Orange Book—"it simply lists those patents that are submitted by patent holders." *Bayer*, 676 F.3d at 1324-25. The consequence of not submitting patent information pursuant to § 355(b)(1) is simply that the patent is removed from the statutory scheme—a generic or 505(b)(2) filer does not need to certify to that patent, and there is no statutory stay in the event of an infringement suit pursuant to 21 U.S.C. § 355(c)(3). That is, declining to submit patent information is not improper or illegal, it is simply an indication that a patent does not meet the listing requirements proscribed by the statute. 21 U.S.C. § 355(b)(1)(A)(viii)(I-II). Jazz cannot hide behind the circular argument that FDA regulations purportedly "required" listing the '963 patent based on the same standards that Avadel has demonstrated are clearly not met.

It is squarely within the bounds of this Court's authority on a 12(c) motion to determine that a patent is improperly listed in the Orange book because it does not meet the statutory requirements. For example, in *In re Lantus Direct Purchaser Antitrust Litig.*, 950 F.3d 1 (1st Cir. 2020), the First Circuit determined, based on the pleadings, that the Plaintiff in a Hatch-Waxman action improperly listed in the Orange Book a patent covering a device for an injector pen because

8

it was not directed to a drug or method of using a drug. *Id.* at 9. There, the Court rejected the Plaintiff's attempt to manipulate the words of the claims to shoehorn them into one of the Orange Book listable categories. *Id.* at 8 ("We see nothing in the statute or regulations that welcomes such a further expansion of the already stretched statutory terms, whereby an integral part of an injector pen becomes the pen itself, and in turn is a drug."). Here, as in *Lantus*, the asserted system claims of the '963 patent do not fall within the enumerated categories identified in the listing statute.

Furthermore, the Supreme Court in *Caraco* made clear that that the remedy for improperly listing a patent in the Orange Book is an order requiring its removal—a remedy that a Court in this district has previously enforced, as discussed below. *Caraco*, 566 U.S. at 419-420; *infra*, part IV.C. Thus, should the Court adopt Avadel's proposal that the '963 patent claims are directed to "systems," it should grant Avadel's motion and order Jazz to delist the '963 patent from the Orange Book.

> **B.** **Even Under Jazz's Proposed Construction The '963 Patent Should Be Delisted Because It Does Not Recite A Method Of Using A Drug**

Even if this Court were to find that the asserted claims of the '963 patent are method claims—which they are not—and adopt Jazz's proposed construction, the '963 patent should not be listed in the Orange Book because it would not claim a "method of *using [a] drug*" as the statute requires. 21 U.S.C. § 355(b)(1)(A)(viii)(II). To the contrary, Jazz proposes that the '963 patent claims are directed to "methods of using a computer-implemented system to *safely distribute* gamma-hydroxybutyrate [("GHB")] for treatment of a narcoleptic patient." D.I. 110 at 6. Jazz's characterizations of the '963 patent in its pleadings further confirm that under Jazz's interpretation, the '963 patent is directed to a method of using a "computer system" and is not directed to a method of using a drug: according to Jazz, the REMS covered by '963 patent is a "restricted *distribution* program" for Jazz's two narcolepsy drug products. D.I. 1 at ¶¶ 29, 30.

9

Because Jazz's proposed interpretation of the '963 patent—a method to safely *distribute* GHB—is in no way a method of *using* GHB, the '963 patent is improperly listed, and Jazz should be required to remove it from the Orange Book. *See In re Lantus*, 950 F.3d at 7 (finding it "readily apparent" from the pleadings that the asserted patent should not be listed in the Orange Book because it did not claim the relevant drug "or any method of using it"); *see also* Exhibit A, Michael A. Carrier & Brenna Sooy, *Five Solutions To The REMS Patent Problem*, 97 B. U. L. Rev. 1661, 1682 (2017) ("Demonstrating why they should not be listed, REMS patents do not claim a method of *using* a drug product for therapeutic reasons but instead claim a method of controlling a drug's distribution…") (emphasis in original).

Nor is it correct to argue, as Jazz has done previously, that *distributing* an oxybate product is the same as *using* the drug product. Allowing Jazz to extend the meaning of "using" a drug to cover a REMS meant to control drug distribution is contrary to the statutory scheme of the Hatch-Waxman Act. *See In re Lantus*, 950 F.3d at 4-5 (explaining that the FDA has made clear that *only* patents which claim a drug or method of using a drug should be listed in the Orange Book, which reflects "an attempt to balance" the competing interests of "promoting competition" and "encouraging research and innovation").

In fact, Congress addressed this very concern and made clear that REMS patents were not intended to trigger 30-month stays when it explicitly **prohibited** REMS patent holders from using such REMS patents to "block or delay approval of an application" to market a drug product. 21 U.S.C. § 355-1(f)(8). The FDA has echoed similar concerns about safety programs like REMS being "leveraged as a way to forestall [market] entry after lawful IP has lapsed on a brand drug." Exhibit B, May 31, 2018 Guidance From FDA Commissioner Scott Gottlieb, at 3. This is precisely what Jazz has done here. Jazz's listing of the '963 patent in the Orange Book was improper and

10

should be removed as a barrier to the prompt approval of FT218. Jazz should not be permitted to further exploit the Hatch-Waxman Act by using patents intended to cover safety protocols to block or delay Avadel's improved, once-nightly product from reaching patients.

### C. The Court Should Issue An Order Directing Jazz To Request That The FDA Delete The '963 Patent From The Orange Book

The remedy under 21 U.S.C. § 355(c)(3)(D)(ii)(I) for an improperly listed-patent is "an order requiring the [brand] to correct or delete the patent information." *Id.*; s*ee also Caraco*, 566 U.S. at 420. Avadel therefore respectfully requests that the Court order Jazz to submit a request to the FDA within 14 days to delete the '963 patent from the Orange Book entry for XYREM, enclosing this Court's Order. *See* Exhibit C, *Avanir Pharms., Inc. v. Actavis South Atl. LLC*, C.A. No. 11-704-LPS, D.I. 518 at 2 (D. Del. 2014). In *Avanir*, the Court ordered the Plaintiff to correct its improper listing with the FDA in light of the fact that the NDA applicant, like Avadel, had been required to certify against the Orange Book-listed patent. *Id.*; Exhibit D, *Avanir Pharms.*, D.I. 498 at 2. Avadel's requested relief is therefore warranted under the statute and appropriate under the circumstances.

### V. CONCLUSION

In light of the foregoing, Avadel respectfully requests that this Court grant its renewed motion for judgment on the pleadings pursuant to FED. R. CIV. P. 12(c) with respect to its counterclaim seeking the delisting of Jazz's '963 patent and its request for an order requiring Jazz to delist the '963 patent under 21 U.S.C. § 355(c)(3)(D)(ii)(I). D.I. 11 at ¶¶ 25-31.

| | |
|---|---|
| Dated: June 23, 2022 | MCCARTER &ENGLISH, LLP |
| | |
| | */s/ Daniel M. Silver* |
| *Of Counsel*: | Daniel M. Silver (#4758) |
| | Alexandra M. Joyce (#6423) |
| Kenneth G. Schuler | Renaissance Centre |
| Marc N. Zubick | 405 N. King Street, 8th Floor |
| Alex Grabowski | Wilmington, Delaware 19801 |
| Sarah W. Wang | (302) 984-6300 |
| LATHAM & WATKINS LLP | dsilver@mccarter.com |
| 330 North Wabash Avenue, Suite 2800 | ajoyce@mccarter.com |
| Chicago, IL 60611 | |
| (312) 876-7700 | *Counsel for Defendant* |
| kenneth.schuler@lw.com | |
| marc.zubick@lw.com | |
| alex.grabowski@lw.com | |
| sarah.wang@lw.com | |

Herman Yue
Bornali Rashmi Borah
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020
(212) 906-1200
Herman.Yue@lw.com
Rashmi.Borah@lw.com

Daralyn J. Durie
DURIE TANGRI LLP
217 Leidesdorff Street
San Francisco, CA 94111
(415) 365-6666
ddurie@durietangri.com

Kira A. Davis
Katherine E. McNutt
DURIE TANGRI LLP
953 East 3rd Street
Los Angeles, CA 90013
(213) 992-4499
kdavis@durietangri.com
kmcnutt@durietangri.com