IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JAZZ PHARMACEUTICALS, INC.,<br><br>               Plaintiff,<br><br>v.<br><br>AVADEL CNS PHARMACEUTICALS LLC,<br><br>               Defendant. | Case No. 1:21-cv-00691-GBW |

**DECLARATION OF GREGORY J. DIVIS IN SUPPORT OF
AVADEL'S OPPOSITION TO JAZZ'S MOTION FOR A STAY PENDING APPEAL**

I, Gregory J. Divis, do hereby declare under penalty of perjury that:

1. I submit this Declaration in support of Avadel's opposition to Jazz's motion for a stay pending appeal. I have personal knowledge of the facts stated herein. If called as a witness in this matter, I could and would competently testify to each of the facts set forth below.

### BACKGROUND

2. I am the Chief Executive Officer of Avadel Pharmaceuticals plc and President of its wholly-owned subsidiary, Avadel CNS Pharmaceuticals, LLC ("Avadel").

### AVADEL'S DEVELOPMENT OF LUMRYZ™

3. Avadel is focused on researching and developing drugs to treat narcolepsy. One drug that has been used for treating narcolepsy is gamma-hydroxybutyrate ("oxybate"), which helps to induce deep, restful sleep.

4. Since 2002, oxybate has been marketed in the United States exclusively by Jazz under the brand name Xyrem, and, since 2020, Xywav. Narcolepsy patients require two doses, one right before bedtime, and a second dose two-and-a-half to four hours later, which necessitates setting an alarm to forcefully awaken in the middle of the night.

5. Avadel's product LUMRYZ is also an oxybate, but unlike Jazz's products, it uses Avadel's proprietary drug delivery technology, which enables dosing once at bedtime. That once-at-bedtime dosing regimen is aimed at affording greater safety, improved compliance, and an improved quality of life for people with narcolepsy. For almost a decade now, Avadel has been primarily focused on developing and securing FDA approval of LUMRYZ.

## THE DELAY IN APPROVAL OF LUMRYZ

6. On December 15, 2020, Avadel submitted to FDA a new drug application ("NDA") for LUMRYZ. Avadel was originally expecting to receive approval in 2021. That did not happen, and to date, LUMRYZ still is not finally approved, as a result of Jazz leaving the '963 patent listed in FDA's Orange Book.

7. On July 18, 2022, FDA issued a tentative approval of the LUMRYZ NDA. A tentative approval is not a full, final, or effective approval of an NDA. Rather, a tentative approval provides that an NDA is approvable, provided that a future contingency is met that would permit the NDA to obtain final approval at a later time. A tentative approval does not permit a drug to come to market, until the condition for final approval is met and FDA issues a letter confirming its final approval of the NDA.

8. Nonetheless, a tentative approval is, in certain situations, an important step in the process of obtaining final drug approval. A tentative approval is a significant milestone for pharmaceutical companies because it provides formal feedback from the FDA that a drug is approvable, provided that an identified condition or eventuality is met in the future.

9. FDA's tentative approval explained that the final approval of the LUMRYZ NDA would be "made effective immediately, unless an action is brought for infringement of one or more of the patents that were the subject of a paragraph IV certification." That is a reference to a type of certification relevant only to patents listed in the Orange Book. FDA further clarified that "[i]f

such a patent infringement action is brought prior to the expiration of 45 days . . . your application would be subject to a 30-month stay of approval . . . ."

10. I understand that because Jazz sued Avadel on the '963 patent after Avadel certified to that patent, there is now a statutory stay in place that precludes final approval of the LUMRYZ NDA. That will continue to be the case until the '963 patent is delisted or until expiration of the '963 patent and the related term of asserted pediatric exclusivity in June 2023.

**HARM TO AVADEL IF JAZZ IS PERMITTED TO KEEP THE '963 PATENT IN THE ORANGE BOOK AS A RESULT OF A STAY**

11. LUMRYZ is Avadel's sole product candidate. Avadel has no other prospective revenue streams. ████████████████████████████████████████ ████████████████████████ As explained in Avadel's most-recent 10-K, Avadel's "business is significantly dependent on the successful development, regulatory approval and commercialization of [LUMRYZ], [Avadel's] only product candidate." Avadel has "invested substantially all of [its] efforts and financial resources in the development of [LUMRYZ]," and "[t]he amount of [Avadel's] future net losses will depend, in part, on . . . [Avadel's] ability to recognize revenues from the commercialization of [LUMRYZ]."

12. If LUMRYZ were approved, Avadel would be able to bring LUMRYZ to market and begin reaching narcolepsy patients, including those who are not currently receiving any oxybate treatment. While the '963 patent remains listed in the Orange Book, Avadel cannot obtain final FDA approval and cannot launch LUMRYZ.

13. Growing a patient base is an incremental process—not all prospective patients will obtain a prescription in the first days or month of a new drug like LUMRYZ entering the market. And there are costs and delays associated with patients switching oxybate drugs (such as obtaining a doctor's appointment, a new prescription, and insurance approval for the drug). For prospective

patients who have not yet been diagnosed with narcolepsy, the process of obtaining a proper diagnosis and subsequently getting on appropriate treatment can potentially take years.

14. The sooner LUMRYZ is approved, the sooner Avadel can begin to build its patient base and recover its substantial investments in developing LUMRYZ. Conversely, if Avadel is kept waiting for final approval because a stay lets Jazz retain the '963 patent in the Orange Book, Avadel will not be able to make that progress. Every day that goes by with that Orange-Book listing still blocking Avadel causes harm to Avadel. It has already been well over a year now since the original PDUFA target action date set for an FDA decision on the LUMRYZ NDA.

15. One issue is this: Avadel is a small company, and because of Avadel's singular focus on a drug that is not yet approved, we cannot finance operations through sales. Every day that we do not have FDA approval pushes off into the future the date on which we can fund operations through sales revenue. Funds spent on maintaining readiness to launch in the face of uncertainty as to when that launch will happen are funds not being invested in other projects, ████████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████████ We want to devote more resources to these projects, but we cannot do so while we do not have sales revenue and while we continue to deal with uncertainty as to our launch date. If Jazz complies with this Court's Order and removes the '963 patent from the Orange Book, I expect that Avadel will then get final approval for LUMRYZ, and we can make different choices than we are making while the cloud of uncertainty lingers. Avadel should not have to continue to exist in that state.

16. For example, we would like ████████████████████████████████ ████████████████████████████████████████████████████████████████████████████████

4

███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
██████████████

17.     Another issue is that, as a result of the fact that we have no sales revenue, we are currently dependent upon our ability to secure funds from other sources, including through financing.  In our most recent 10-Q filing, we disclosed a liquidity issue relating to notes due October 2023, explaining that Avadel "does not currently have sufficient available liquidity to repay the outstanding balance of the October 2023 Notes. These conditions and events raise substantial doubt about the Company's ability to continue as a going concern within one year after the date that these unaudited condensed consolidated financial statements are issued."

18.     ████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████

███   We should have the opportunity to secure terms that are appropriate for a company with an approved product.

19.     I also expect that, if LUMRYZ launches sooner rather than later, we can divert fewer of our precious resources to responding to the introduction of generic twice-nightly oxybate products than would be the case if we cannot launch until later.  Jazz has publicly reported it "granted Hikma the right to sell an authorized generic product, or AG Product, with royalties back to us, in the U.S. beginning on January 1, 2023, or earlier under certain circumstances. . . . [Jazz] also granted Hikma a license to launch its own generic sodium oxybate product as early as six months after it has the right to sell the Hikma AG Product . . . ." Jazz 2021 Annual Report at 34.[1] Jazz has also settled with a number of other generics who have rights to start selling generic twice-nightly sodium oxybate on various other dates beginning on July 1, 2023.  *Id.*  Jazz has reported that at least some those agreements have acceleration clauses that will allow certain companies to launch sooner than the reported date if a trigger event happens, such as another generic product launching.  Avadel does not know what all the triggering events are.  If we can launch LUMRYZ in the near future, it should be the case that either no generic product will have launched or only one will have launched, namely, the Hikma authorized generic.  If we are not able to get final approval of LUMRYZ until after June 2023, more generics will have launched.

20.     Because these generic drugs will be twice-nightly products that require patients to forcefully awaken in the middle of the night for the second dose, the patients and physicians who would prefer LUMRYZ over Xyrem should likewise prefer LUMRYZ over generic twice-nightly

---

[1] *Available at*: https://investor.jazzpharma.com/static-files/12cee389-db4e-47d1-9c0b-d909bae79bef

oxybate. But we cannot simply trust that physicians, patients, and payers will come to that conclusion. We will have to devote resources to making that point. The more time that passes with patients, physicians, and payers considering a switch to a generic oxybate without LUMRYZ being a part of the conversation, the more we will have to work to get those same groups to consider LUMRYZ. And because we do not know what all the trigger provisions are and are missing other data known only to Jazz and the generics, we cannot be certain that our assumptions and related projections—about how many patients will switch to generic twice-nightly oxybate, what the subsequent pricing of the generics will be as they enter the market—are accurate. That is only one example of the many uncertainties and risks we currently face because we have not been able to launch LUMRYZ.

21. While Avadel is forced to carefully marshal its resources, Jazz is enjoying significant benefits of having the market to itself. Based on public information, we estimate that Jazz's sales revenues are approximately $5 million *per day* in oxybate sales in this period of time where it has no competition.

I declare under penalty of perjury under the laws of the United States of America that the foregoing declaration is true and correct.

    Executed on November 29, 2022          _____

    Chesterfield, Missouri                            Gregory J. Divis, President

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that true and correct copies of the foregoing document were caused to be served on November 29, 2022 on the following counsel in the manner indicated below.

### VIA EMAIL:

Jack B. Blumenfeld
Jeremy Tigan
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
jblumenfeld@morrisnichols.com
jtigan@morrisnichols.com

F. Dominic Cerrito
Eric C. Stops
Evangeline Shih
Andrew S. Chalson
Gabriel P. Brier
Frank C. Calvosa
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
nickcerrito@quinnemanuel.com
ericstops@quinnemanuel.com
evangelineshih@quinnemanuel.com
andrewchalson@quinnemanuel.com
gabrielbrier@quinnemanuel.com
frankcalvosa@quinnemanuel.com

*Attorneys for Plaintiffs*

Dated: November 29, 2022        /s/ *Daniel M. Silver*
                                Daniel M. Silver (#4758)

ME1 43486596v.1