# EXHIBIT A

```
 1                    IN THE UNITED STATES DISTRICT COURT

 2                    IN AND FOR THE DISTRICT OF DELAWARE

 3
   JAZZ PHARMACEUTICALS, INC.,             )
 4           Plaintiffs,                   )   C.A. No.
   v.                                      )   21-691-GBW
 5                                         )
   AVADEL CNS PHARMACEUTICALS, LLC,        )
 6           Defendant                     )
   -------------------------------         )
 7                                         )   C.A. No.
   JAZZ PHARMACEUTICALS, INC., et al.,     )   21-1138-GBW
 8           Plaintiffs,                   )
   v.                                      )
 9                                         )
   AVADEL CNS PHARMACEUTICALS, LLC,        )
10   Defendant.                            )
   -------------------------------         )
11                                         )
   JAZZ PHARMACEUTICALS, INC., et al.,     )
12           Plaintiffs,                   )   C.A. No.
   v.                                      )   21-1594-GBW
13                                         )
   AVADEL CNS PHARMACEUTICALS, LLC,        )
14           Defendant.                    )

15

16                              - - - -

17                       Wilmington, Delaware
                         Wednesday, January 5, 2023
18                       Teleconference Transcript
                              Volume II  ████

19
                                - - - -
20
     BEFORE:   HONORABLE GREGORY B. WILLIAMS
21             UNITED STATES DISTRICT COURT JUDGE

22
                                - - - -
23

24

25                                   Michele L. Rolfe, RPR, CRR
```

```
 1    APPEARANCES:

 2
                MORRIS, NICHOLS, ARSHT & TUNNELL LLP
 3              BY: JEREMY A. TIGAN, ESQ.

 4                     -and-

 5              QUINN EMANUEL URQUHART & SULLIVAN, LLP
                BY:  F. DOMINIC CERRITO, ESQ.
 6                   NICHOLAS LoCASTRO, ESQ.
                     GABRIEL P. BRIER, ESQ.
 7                   FRANK C. CALVOSA, ESQ.

 8                   For the Plaintiff

 9


10              MCCARTER & ENGLISH, LLP
                BY: ALEXANDRA M. JOYCE, ESQ.
11
                       -and-
12
                LATHAM & WATKINS LLP
13              BY: KENNETH G. SCHULER, ESQ.
                    MARC N. ZUBICK, ESQ.
14                  ALEX GRABOWSKI, ESQ.

15                     -and-

16
                DURIE TANGRI LLP
17              BY: DARALYN J. DURIE, ESQ.
                    KIRA DAVIS, ESQ.
18

19                      For the Defendant

20

21

22

23

24

25
```

```
 1                        - - - - -
 2                     P R O C E E D I N G S
 3
 4         (REPORTER'S NOTE:  The following teleconference was
 5   held at 11:00 a.m.)
 6             THE COURT:  All right.  We have counsel for Jazz
 7   on the line?
 8             MR. TIGAN:  Yes, Your Honor, we're all on.
 9             THE COURT:  Okay.  Counsel for Avadel on the
10   line?
11             MS. JOYCE:  Yes, Your Honor, we're on.
12             THE COURT:  Okay.  So let's proceed with
13   Avadel's request to re-depose Jazz's Rule 30(b)(6) witness,
14   Mr. Allphin.
15             MS. DURIE:  Thank you, Your Honor, and good
16   morning.  This is Daralyn Durie.
17             I will start with topic 20.  This appears at
18   Mr. Allphin's deposition transcript at page 44.
19             Topic 20 was directed to experiments conducted
20   on a particular formulation of GHB, the active ingredient
21   with certain characteristics.
22             I asked the witness:
23             "QUESTION:  What did you do to prepare on topic
24   20?
25             "ANSWER:  I don't recall.
```

```
 1                "QUESTION:  Did you review any documents in
 2   order to prepare to testify on Topic 20?
 3                "ANSWER:  I can't recall.
 4                "QUESTION:  Have you reviewed any experiments
 5   that were conducted on a formulation with the
 6   characteristics set forth in topic 20?"
 7                There was an objection.
 8                The witness's answer:
 9                "ANSWER:  I can't recall.
10                "QUESTION:  Did Jazz ever conduct any
11   experiments on a formulation with the characteristics set
12   forth in topic 20?
13                "ANSWER:  I can't recall.
14                "QUESTION:  In preparation for providing
15   testimony on topic 20, did you ask anyone at Jazz whether
16   Jazz had ever conducted any experiments as set forth in
17   topic 20?
18                "ANSWER:  No.
19                "QUESTION:  I take it that you, yourself, did
20   not conduct any experiments as set forth in topic 20; is
21   that correct?
22                "ANSWER:  I do not recall doing any experiments,
23   that's correct.
24                "QUESTION:  Could you tell me who else at Jazz
25   might have conducted any experiments as set forth in topic
```

```
 1    20?"
 2              There was an objection.
 3              "ANSWER:  No.
 4              "QUESTION:  You don't know?
 5              "ANSWER:  I can't recall, so I can't speculate
 6    on who might have.
 7              "QUESTION:  And so if I wanted to know whether
 8    Jazz ever did any experiments as set forth in topic 20,
 9    there's no one else that you could point me to who might
10    know the answer to that question; is that right?"
11              There was an objection.
12              "ANSWER:  That is correct.
13              "QUESTION:  And, therefore, to the best of your
14    knowledge, is it correct that Jazz never conducted any
15    experiments as set forth in topic 20?"
16              There was an objection.
17              "ANSWER:  Based on my recollections, I would
18    have to say I don't recall.
19              "QUESTION:  Now, you understand you're here to
20    testify about the knowledge of Jazz as a company with
21    respect to these experiments?
22              ANSWER:  I understand.
23              "QUESTION:  And what you're saying is that as
24    Jazz, the company, you're not aware of Jazz having conducted
25    any such experiments?"
```

1                   There was an objection.

2                   "MR. CERRITO:  Objection; that's not what he

3    said.  Mischaracterizes testimony and asked and answered

4    three times now.

5                   "ANSWER:  I don't recall such experiments.  I

6    suppose I'm not aware of them.  That doesn't necessarily

7    mean that those experiments weren't done.

8                   "QUESTION:  Did you do anything to try to figure

9    out whether those experiments were done?

10                  "ANSWER:  No."

11                  The witness's testimony on other topics was

12   similar.  Topic 19 also asked for testimony regarding

13   certain experiments with certain characteristics.  Treating

14   narcolepsy with a single-dose oxybate formulation.

15                  The witness testified at page 41 at his

16   deposition he didn't recall what he had done to prepare to

17   testify.  He didn't review any experiments and he was not

18   aware of any experiments Jazz had conducted.

19                  Moving on to page 55 of the transcript.  I asked

20   him:

21                  "QUESTION:  When in the history of the world did

22   you first contemplate the method that is set forth in topic

23   19?

24                  "ANSWER:  I don't recall.

25                  "QUESTION:  Is there any way you could put a

```
 1    timeframe around when it was you first contemplated that
 2    method?"
 3              There was an objection.
 4              "ANSWER:  No."
 5              Moving down to page 56, line 15:
 6              "QUESTION:  Have you contemplated a method of
 7    treating narcolepsy as set forth in topic 19 before learning
 8    that Avadel had filed patent claims on such a method?"
 9              There was an objection:
10              "ANSWER:  I don't recall."
11              The witness answered questions with some form of
12    "I don't recall" over 150 times throughout the course of his
13    deposition.  He was drastically unprepared to testify with
14    respect to all of these topics.  And his ability to answer
15    questions was further impeded by a constant string of
16    speaking objections.
17              Page 64 I started to ask a question:  "What's
18    your general understanding --"  Mr. Cerrito interrupted:
19    "You're not here to speculate, we're here about the facts."
20              I asked him a further question -- we're now at
21    page 76 of the transcript:
22    [redacted]
23    [redacted]
24    [redacted]
25              "MR. CERRITO:  I think he said I don't know
```

```
 1        twice, but you can do it again."
 2                  I said:  "Objection to the leading."
 3                  His response:  "You can object, that's fine.
 4   It's the same question, he will give you the same answer."
 5   Which indeed he did.
 6                  Moving on to page 87:
 7                  "QUESTION:  Why did it not have much that you
 8   could use?
 9                  "ANSWER:  I'm speculating.  If it was 2010 --"
10                  Mr. Cerrito interrupted the witness:  "Asking
11   for facts.  No speculation."
12                  "ANSWER:  I don't recall."
13                  Page 114 of the transcript:
14                  "QUESTION:  So the statement that the maximum
15   plasma concentration would be about the same as an
16   equivalent dose administered from an immediate release
17   formulation, that doesn't tell you anything about what the
18   bio availability from the controlled release dosage form
19   would need to be?"
20                  "MR. CERRITO:  I'm completely lost.  Other than
21   saying I asked --"
22                  And I started to clarify, I said:  "Hold on.
23   Hold on.  Let me finish my objection then you can be lost
24   also.  Vague and ambiguus, calls for an expert opinion,
25   incomplete hypothetical, you can answer."
```

1           "ANSWER:  I wouldn't know."

2           Your Honor, in view of this repeated pattern of
3    the witness not having been prepared, not having reviewed
4    any documents, not being able to answer questions within the
5    scope of the topics, and constantly being coached throughout
6    the deposition to answer questions "I don't know," we are
7    asking for an additional three hours of deposition time of
8    this witness and that he be adequately prepared to answer
9    questions within the scope of the designated topics.  Thank
10   you.

11          THE COURT:  All right.  Thank you.

12          A couple of questions for you, Ms. Durie.  Why
13   did Avadel wait two months after this deposition occurred to
14   raise this issue with the Court?

15          MS. DURIE:  There are two reasons, Your Honor:
16   One, we were endeavoring to meet-and-confer to see if we
17   could resolve these issues.

18          And, two, we were aware of the fact that we had
19   a number of other matters that we had teed up for the Court
20   with respect to the delisting motions and so we were
21   endeavoring to sequence issues and not sort of overburden
22   the Court with a number of different issues at the same
23   time.

24          THE COURT:  Okay.  And second question:  I
25   understand that Mr. Allphin was designated to testify only

1   as to facts that predated February 2016.  Was there another
2   witness designated to testify to facts after February 2016?
3   And if so, was that person prepared to testify?
4               MS. DURIE:  So, Mr. Allphin was -- that 2016
5   timeframe limitation applied to some of the topics.  There
6   was another witness who was designated, I believe, with
7   respect to the post-2016 activities for those topics.
8               I would say that our view is that Jazz's
9   witnesses were woefully unprepared across the board.  But we
10  are only asking for additional time from Mr. Allphin because
11  he was covering the topics that are most critical, including
12  some that did not have those date limitations.  And we
13  really need to know what Jazz's position is with respect to,
14  for example, whether the experiments that I just referenced
15  were or were not conducted.
16              THE COURT:  Okay.  Understood.
17              All right.  Let me hear from counsel for Jazz.
18              MR. CALVOSA:  Good morning, Your Honor.  This is
19  Frank Calvosa on behalf of Jazz.
20              I'll just start off with the one thing, the
21  timing of this obviously is right in the throws of expert
22  discovery.  The parties reached an impasse on November 3rd,
23  we never heard from Avadel again until December 19th.
24              With respect to the preparation of Mr. Allphin,
25  I think Ms. Durie mischaracterizes his testimony with

1    respect to what he did for his preparation.

2             As you saw in the letter brief we provided,

3    Mr. Allphin spent two-and-a-half days reviewing documents

4    and preparing for his deposition.  Asked in the abstract

5    about timing of certain things or what he did or which

6    documents he looked at for specific topics versus just his

7    overall preparation, and largely you'll see these topics

8    overlap.  You know, did I look at this document for this

9    topic or this document for this topic, that's a hard

10   question to answer.  And he repeatedly answered all I did

11   was I spent two -- you know, two, two-and-a-half days with

12   counsel looking at documents.  There's no question he looked

13   at documents.  There's not one example that counsel for

14   Avadel puts in front of you where they asked did you look at

15   this document and he said no.

16            In fact, we, counsel for Jazz, identified the

17   information that they were looking for to Avadel as far as a

18   year in advance of his deposition that took place.  They had

19   the relevant documents.  And if you look at Exhibit 4 to our

20   opposition, it's only about 10, 15 documents in there.  They

21   had the information right before then.

22            Now in a lot of the questions they chose not to

23   use those documents.  They asked questions in the abstract

24   about things that happened 7, 13 years ago.  It's not

25   surprising that the witness does not recall without the use

1  of documents.

2  We have case law that we provided to Your Honor
3  which says that Rule 30(b)(6) depositions are not a memory
4  test.  Right.  Avadel could have put documents in front of
5  him to ask him in the context and help refresh his
6  recollection, they chose not to do so.

7  In terms of specific questions that weren't
8  answered, in our letter we addressed the ones that they
9  raised, there were only a few of them, and we believe that
10 Mr. Allphin appropriately answered them.

11 [redacted]
12 [redacted]
13 [redacted]
14 [redacted]
15 [redacted]
16 [redacted]
17 [redacted]

18 With respect to whether Mr. Allphin talked to
19 anybody, Mr. Allphin is the one that did the work.  Avadel
20 never established during the deposition that there was
21 anybody else for Mr. Allphin to talk to or reasonably
22 available for Mr. Allphin talk to.

23 The only name they mentioned in their letter,
24 Mr. Fifer, who was a co-inventor of Mr. Allphin's,
25 unfortunately passed away long ago, so he's not available

```
 1    for Jazz for the preparation of the deposition.
 2                I believe that the full transcript adequately
 3    shows that Mr. Allphin was fully prepared, he knew there
 4    were documents that had the information in there, he told
 5    counsel that.  Counsel had those documents, the same ones
 6    identified to them before the deposition, and they were
 7    unprepared to bring those out until the very end of the
 8    deposition when they ran out of time.
 9                Mr. Allphin already gave seven hours.  The
10    parties are now in a position where they should be focused
11    on expert discovery, not giving Avadel additional time
12    because it ran out of time at its first deposition of
13    Mr. Allphin.
14                The last point I'll briefly address is, you
15    know, an accusation of speaking objections.  We had a
16    meet-and-confer on this -- I'm not sure if Ms. Durie was on,
17    but I spoke with Mr. Zubick for Latham & Watkins and we
18    brought up objections that their side made and both parties
19    agreed that nothing improper was going on, the parties are
20    going to do their best to abide by the rules going forward.
21    We never heard boo from them again on it.  So to bring it up
22    now is, I think, disingenuous in Avadel's view of things,
23    but I'll leave it at that.
24                If Your Honor has any questions on any specific
25    topic, I'm happy to answer it.
```

```
 1                THE COURT:  This question is for both sides,
 2   just to clarify my understanding.
 3                Based on parties' submissions, it appears that
 4   the parties during their meet-and-confer had agreed that for
 5   certain topics, that Avadel would identify specific
 6   experiments or documents for which it intended to seek
 7   testimony prior to the deposition; is that right?
 8                MS. DURIE:  Your Honor --
 9                MR. CALVOSA:  That's correct, Your Honor.  And
10   I'm catching some slack for forgetting to mention that on
11   the first go-around, but that was a big part of it.  Right.
12                We originally served our objections, we said we
13   can't possibly prepare a witness, this is so long ago, it's
14   so broad in scope.  We met and conferred, and based on
15   Avadel's representation, it's clear in writing -- I believe
16   it's in Exhibit 2 to our opposition -- you know, they said
17   we'll identify the specific documents and experiments and --
18   granted they say before that that doesn't relieve your
19   obligation for preparing.  We agreed, we prepared him as
20   best we could based on the information we had reasonably
21   available.  If they wanted more specific information, we
22   told them identify it.  They agreed; that never happened,
23   they never upheld their end of the agreement.
24                MS. DURIE:  Your Honor, we agreed that if we had
25   detailed questions about specific experiments, we would
```

|   |   |
|---|---|
| 1 | identify those experiments, but those were not the questions |
| 2 | that I was asking. |
| 3 | We were trying, for example, to establish in the |
| 4 | testimony that I read before that no experiments were |
| 5 | conducted with respect to a particular subject matter.  That |
| 6 | is our view of the record.  The witness was unable to |
| 7 | confirm that no such experiments were conducted, although |
| 8 | that was squarely within the scope of the topics. |
| 9 | Topic 8 -- and this appears at the deposition |
| 10 | transcript at page 17 -- was referring to Jazz's decision to |
| 11 | develop a once nightly oxybate formulation. |
| 12 | I asked the witness at page 19: |
| 13 | "QUESTION:  What was the basis for Jazz's |
| 14 | decision to develop a once nightly oxybate formulation in |
| 15 | 2009? |
| 16 | "ANSWER:  I don't recall." |
| 17 | I mean, these were not just detailed memory test |
| 18 | questions about these details experimental parameters of a |
| 19 | particular experiment.  The witness had no substantive |
| 20 | information to convey at all with respect to the vast |
| 21 | majority of these topics. |
| 22 | MR. CALVOSA:  Your Honor, that's a -- just to |
| 23 | respond briefly to topic number 8, that's a very poor |
| 24 | example on Ms. Durie's part. |
| 25 | The witness testified when the product started, |

```
 1    2009. ███████████████████████████████
 2    ████████████████████████████████████
 3    ████████████████████████████████████
 4    ████████████████████████████████████
 5             The questions were answered.  They might point
 6    to, you know, one thing here or there where it wasn't clear
 7    in the question or he didn't specifically answer it, but it
 8    goes on to explain, as you look at the full transcript, all
 9    their questions were answered.  They do nothing to address
10    that.
11             MS. DURIE:  Your Honor, page topic number --
12             (Reporter interrupted.)
13             MR. CALVOSA:  Sure.  Those pages of the
14    transcript where the information is adequately addressed,
15    Avadel has done nothing to show that specific questions --
16    and we say this in our letter -- weren't answered.  This was
17    a more broad-based attempt to attack Jazz in its witnesses
18    preparations.  And I just think the record bears out a very
19    different story here.
20             MS. DURIE:  Your Honor, responding directly to
21    the point that was made about topic 8, at page 20, beginning
22    at line 14:
23             "QUESTION:  When did Jazz first consider
24    developing a one-nightly oxybate formulation for narcolepsy?
25             "ANSWER:  I don't recall.
```

1          "QUESTION: Approximately when?

2          "ANSWER: I don't recall.

3          "QUESTION: Can you give me any estimate as to

4   when it was that Jazz first considered developing a

5   one-nightly oxybate formulation for narcolepsy?"

6          There was a clarifying question.

7          "ANSWER: I can't know with certainly.

8          "QUESTION: Do you have any estimate?

9          "ANSWER: I can't recall."

10         Again, not detailed questions, just trying to

11  understand the timeframe of their development.  He was

12  unprepared to provide that, as was true with respect to

13  virtually all the lines of questions.

14         THE COURT: Okay.  In reviewing the submissions,

15  the transcript and just asking clarifying questions during

16  this argument, I am comfortable that the witness was not

17  adequately prepared.

18         Rule 30(b)(6) requires more, and there are

19  multiple instances throughout the transcript where the

20  witness has responded "I do not know" or "I do not recall"

21  to questions that ask basic types of information.

22         So, for that reason, I'm going to grant the

23  request to re-depose Jazz's Rule 30(b)(6) witness, Mr.

24  Allphin, for up to an additional three hours.

25         Now, with respect to topics 9, 11 through 13, 17

```
 1    through 21, consistent with the parties prior sort of
 2    understanding, Avadel should identify to Jazz specific
 3    experiments or documents for which it intends to seek
 4    testimony at least 72 hours prior to the deposition with
 5    respect to specific experiments.
 6              I want to distinguish that from questions that
 7    ask just sort of basic general information, such as whether
 8    or not any experiment was conducted on a specific topic.
 9    That type of question is not something that Avadel would be
10    expected to produce a document or experiment on in advance.
11    I mean, that's the type of information a Rule 30(b)(6)
12    witness should be prepared to answer without specific
13    documents.
14              So that is the ruling on that motion.
15              I would remind counsel on both sides to comply
16    with Rule 30 with respect to appropriate objections during a
17    deposition, objection must be stated concisely in a
18    nonargumentative and nonsuggestive manner.
19              So that is the ruling on that motion.
20              As I said previously, we've taken Jazz's motion
21    to stay expert discovery under advisement, I will issue a
22    ruling on that promptly.
23              MS. DURIE:  Thank you, Your Honor.
24              THE COURT:  All right.  That's all that I had on
25    the agenda for today, so I'm going to thank the parties.
```

1  Good job on both sides.

2              MS. DURIE:  Thank you, Your Honor.

3              MR. CERRITO:  Thank you, Your Honor.

4              (Whereupon, the following proceeding concluded

5  at 11:49 a.m.)

6              I hereby certify the foregoing is a true

7  and accurate transcript from my stenographic notes in the

8  proceeding.

9                           /s/ Michele L. Rolfe, RPR, CRR
                                U.S. District Court