# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JAZZ PHARMACEUTICALS, INC., <br><br> Plaintiff, <br><br> v. <br><br> AVADEL CNS PHARMACEUTICALS, LLC, <br><br> Defendant. | C.A. No. 21-691-GBW <br><br> **PUBLIC VERSION** |
| JAZZ PHARMACEUTICALS, INC., et al., <br><br> Plaintiffs, <br><br> v. <br><br> AVADEL CNS PHARMACEUTICALS, LLC, <br><br> Defendant. | C.A. No. 21-1138-GBW <br><br> **PUBLIC VERSION** |
| JAZZ PHARMACEUTICALS, INC., et al., <br><br> Plaintiffs, <br><br> v. <br><br> AVADEL CNS PHARMACEUTICALS, LLC, <br><br> Defendant. | C.A. No. 21-1594-GBW <br><br> **PUBLIC VERSION** |

**JAZZ'S OPPOSITION TO DEFENDANT'S MOTION TO
EXCLUDE EXPERT TESTIMONY OF MARK RAINEY, PH.D.**

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ...........................................................................................................1

II. AVADEL'S MOTION ████████████████████████
   ██████████ SHOULD BE DENIED..................................................................1

   A. Avadel Grossly Mischaracterizes Dr. Rainey's Reasonable Royalty
      Analysis............................................................................................................2

   B. Dr. Rainey's Opinions Do Not Rely On ████████████ ..............................6

   C. Avadel's Cases Are Inapposite And Irrelevant To The Facts Here.........................7

III. CONCLUSION................................................................................................................8

# **TABLE OF AUTHORITIES**

**Page(s)**

### Cases

*Asetek Danmark A/S v. CMI USA Inc.*,
   852 F.3d 1352 (Fed. Cir. 2017)............................................................................................3

*AstraZeneca AB v. Apotex Corp.*,
   782 F.3d 1324 (Fed. Cir. 2015)............................................................................................5

*Carnegie Mellon Univ. v. Marvell Tech. Group, Ltd.*,
   807 F.3d 1283 (Fed. Cir. 2015).........................................................................................2, 5

*Godo Kaisha IP Bridge 1 v. TCL Commc'n Tech.*,
   967 F.3d 1380 (Fed. Cir. 2020)............................................................................................1

*In re Koninklijke Philips Pat. Litig.*,
   No. 18-01885, 2020 WL 7398647 (N.D. Cal. Apr. 13, 2020)...............................................8

*LaserDynamics, Inc. v. Quanta Computer, Inc.*,
   694 F.3d 51 (Fed. Cir. 2012)................................................................................................7

*M2M Sols. LLC v. Enfora, Inc.*,
   167 F. Supp. 3d 665 (D. Del. 2016).....................................................................................7

*Micro Chem., Inc. v. Lextron, Inc.*,
   317 F.3d 1387 (Fed. Cir. 2003)............................................................................................5

*MiiCs & Partners, Inc. v. Funai Elec. Co.*,
   No. 14-804, 2017 WL 6268072 (D. Del. Dec. 7, 2017) ......................................................7

*Nordock Inc. v. Sys. Inc.*,
   2013 WL 989864 ..................................................................................................................7

*Rite-Hite Corp. v. Kelley Co., Inc.*,
   56 F.3d 1538, 1545 (Fed. Cir. 1995) (en banc)................................................................2, 5

*Summit 6, LLC v. Samsung Elecs. Co.*,
   802 F.3d 1283 (Fed. Cir. 2015)....................................................................................3, 5, 6

*TRUSTID, Inc. v. Next Caller Inc.*,
   No. 18-172, 2020 WL 5016924 (D. Del. Apr. 4, 2020)....................................................3, 5

*TWM Mfg. Co., Inc. v. Dura Corp.*,
   789 F.2d 895 (Fed. Cir. 1986)..............................................................................................5

**Rules/Statutes**

Fed. R. Civ. P. 59 ...........................................................................................................................1

Fed. R. Evid. 702 ..........................................................................................................................1

## I. INTRODUCTION

Avadel CNS Pharmaceuticals, LLC ("Defendant" or "Avadel") moves to exclude certain expert testimony of Dr. Mark Rainey. Br. 32-35.[1] Jazz Pharmaceuticals, Inc. and Jazz Pharmaceuticals Ireland Ltd. ("Plaintiffs" or "Jazz") oppose and Avadel's motion should be denied. Avadel argues that Dr. Rainey "engages in an improper reasonable royalty analysis that treats Jazz not as a willing licensor (as legally required), but as a party that will threaten to walk away from the hypothetical negotiation and force Lumryz™ off the market if its demands are not met." *Id.* at 35. But, as explained below, Avadel is wrong. Dr. Rainey conducted a proper reasonable royalty analysis tied to the specific facts of this case.

## II. AVADEL'S MOTION ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ SHOULD BE DENIED

Dr. Rainey's reasonable royalty analysis is legally and economically sound. Dr. Rainey's assessment of the hypothetical negotiation—▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ is the product of reliable principles and methods, using case-specific data, that will assist the jury in determining past damages for Avadel's infringement of the Patents-in-Suit. FED. R. EVID. 702.[2] Dr. Rainey's royalty rates are not a product ▓▓▓▓▓▓▓; instead, Avadel's ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ to make over $6 billion dollars by entering into the hypothetical license with Jazz. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

---

[1] As used herein, "Br." refers to Avadel's "Brief in Support of Defendant's Summary Judgment and Daubert Motions" (C.A. No. 21-691, D.I. 407).

[2] Because Jazz seeks a permanent injunction to enjoin Avadel from future infringement, Jazz will seek a reasonable royalty on *past* damages at trial. *See, e.g.*, A2710, ¶ 9, A2764, ¶¶ 168-170, A2798, Exhibit 8; A2845-A2846, ¶¶ 103-105, A2870 Exhibit R5. If the Court denies an injunction, then Jazz will seek an ongoing royalty for Avadel's future infringement pursuant to Fed. R. Civ. P. 59. *See, e.g.*, *Godo Kaisha IP Bridge 1 v. TCL Commc'n Tech.*, 967 F.3d 1380, 1382 (Fed. Cir. 2020).

██████████████████████████████████

██████████████████████████████ At bottom, Avadel simply wants to pay a lower royalty rate and thus, to bolster its chances of doing so at trial, seeks to preemptively preclude Dr. Rainey's testimony on only higher rates. Avadel, however, should not be permitted to invade the jury's role as fact finder. ████████████████████████████████████████████████████████

████████████████████████████

### A. Avadel Grossly Mischaracterizes Dr. Rainey's Reasonable Royalty Analysis

The parties' experts agree that there is no established royalty for the Patents-in-Suit. A2717, ¶ 36; A2825, ¶ 53; A2960, 100:14-20. Thus, each party intends to present its own view of a hypothetical negotiation at trial through competing expert witnesses. *See, e.g., Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995) (en banc) ("The royalty may be based upon an established royalty, if there is one, or if not, upon the supposed result of hypothetical negotiations between the plaintiff and defendant."). The "basic premise of the hypothetical negotiation is the opportunity for making substantial profits if the two sides [are] willing to join forces by arriving at a license of the technology." *Carnegie Mellon Univ. v. Marvell Tech. Group, Ltd.*, 807 F.3d 1283, 1304 (Fed. Cir. 2015) (internal cite and quotations omitted).

Because the market for narcolepsy treatments is complex—and both Avadel and Jazz expect other competing products (i.e., products other than Lumryz™) to be introduced at various times during the term of Patents-in-Suit—████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████ A2761-A2762, ¶ 164. This structure for the hypothetical license reflects both parties' views of the narcolepsy market and is structurally consistent with agreements considered by Dr. Rainey.

A2717-A2719, ¶¶ 39-44; A2720, ¶ 50; A2720-A2721, ¶¶ 51-54; A2722, ¶ 58; A2757-A2758, ¶ 152.  Further, ███████████████████████████████████████████████████████████████████ by entering into Dr. Rainey's hypothetical license.  A2808, ¶ 15; *see also* A2856, Exhibit R2.

Notably, Avadel did not provide the Court with Dr. Rainey's complete Opening Report or even cite to his Reply Report.  Both show that Dr. Rainey's analysis is tied to the facts and circumstances of this case—including a detailed assessment of each *Georgia-Pacific* factor (A2715, ¶ 28; A2716, ¶ 33; A2716-A2754, ¶¶ 35-139; A2804-A2805, ¶ 4, A2825-2842, ¶¶ 53-93)—as applied to the hypothetical negotiation in the May-June 2023 timeframe (*see, e.g.*, A2716, ¶¶ 32-34, A2753, ¶¶ 136-138; A2804-A2805, ¶ 4; A2806, ¶ 10; A2808-A2809 ¶¶ 16-17).  *See, e.g., Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1296 (Fed. Cir. 2015) ("[W]here the methodology is reasonable and its data or evidence are sufficiently tied to the facts of the case, the gatekeeping role of the court is satisfied."); *TRUSTID, Inc. v. Next Caller Inc.*, No. 18-172, 2020 WL 5016924, *3 (D. Del. Apr. 4, 2020) (damages methodology was "sufficiently tied to the facts of the case").  Dr. Rainey explained that his analysis is not simply a calculation to ███████████████████████████████████████ (Br. 32), as Avadel contends, but Dr. Rainey evaluates the incremental value of the Patents-in-Suit as viewed by both parties at the time of the hypothetical negotiation.[3]  *See, e.g.*, A2808-A2809, ¶¶ 16-17; A2810-A2811, ¶¶ 19-22; A2819-A2821, ¶¶ 42-44; A2840-A2841, ¶ 88; A2882, 37:11-16; A2932, 239:20-240:13; A2933, 241:3-242:2.

---

[3] The Federal Circuit has explained that "a patent owner participating in a hypothetical negotiation would consider the profits on sales it might lose as a result of granting a license." *Asetek Danmark A/S v. CMI USA Inc.*, 852 F.3d 1352, 1362 (Fed. Cir. 2017).

For example, in arriving at his opinions, Dr. Rainey relied on case-specific facts, including, that: **(1)** ▮▮▮▮▮ (A2738-A2747, ¶¶ 99-122; A2751-A2752, ¶ 132; A2753, ¶ 138.c; A2808-A2809, ¶ 16; A2837-A2838, ¶¶ 79-80); **(2)** the extended-release, once-nightly formulation drives healthcare provider and patient preference to use Lumryz™ (A2740-A2742, ¶¶ 105-111); **(3)** there are no non-infringing alternatives available to Avadel (A2747-A2748, ¶¶ 123-124; A2753, ¶ 138.b; A2808-A2809, ¶¶ 16-17; A2837, ¶ 79); **(4)** Lumryz™ is Avadel's only commercial product (A2753, ¶ 138.c); ▮▮▮▮▮ (A2717, ¶ 36; A2728, ¶ 71; A2812-A2813, ¶ 25; A2830, ¶ 65); **(6)** Jazz and Avadel are direct competitors and ▮▮▮▮▮ (A2728-A2733, ¶¶ 72-86; A2753, ¶ 137; A2809, ¶ 17; A2833, ¶ 70); **(7)** ▮▮▮▮▮ (A2748-A2749, ¶ 126; A2838, ¶ 81); **(8)** Avadel's ▮▮▮▮▮ (A2735, ¶ 91; A2796, Exhibit 7 (Column [G]); A2808, ¶ 15; A2856, Exhibit R2 (Column [D])); and, **(9)** third-party analysts at the time of the hypothetical negotiation also expected Avadel to make billions of dollars in revenues from Lumryz™ sales through the life of the Patents-in-Suit (A2762-A2763, ¶¶ 166-167; A2796, Exhibit 7; A2807, ¶ 14; A2856, Exhibit R2).

Avadel's argument ▮▮▮▮▮ ignores that "a key inquiry" in the hypothetical negotiation is "what it would have been worth to [Avadel], as it saw things at the time, to obtain the authority to use the patented technology, considering the

benefits it would expect to receive from using the technology and the alternatives that it might have pursued." *Carnegie Mellon*, 807 F.3d at 1304. Here, Avadel only benefits by entering into a license for the Patents-in-Suit, and there are no non-infringing alternatives for Avadel to pursue. Under these circumstances, the royalty rates resulting from Dr. Rainey's analysis are not "staggeringly high" as Avadel contends. *See, e.g.*, *TRUSTID*, 2020 WL 5016924, at *2 (permitting testimony of a 71.6% royalty rate); *AstraZeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1334 (Fed. Cir. 2015) (affirming a 50% royalty rate); *Rite-Hite Corp. v. Kelley Co.*, Inc., 56 F.3d 1538, 1555 (Fed. Cir. 1995) (en banc) (affirming a 50% royalty rate).

███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████ A2991, 221:12-223:15. In other words, Avadel's complaint is not with the underlying methodology itself, but with the resulting royalty rate that Dr. Rainey intends to proffer at trial. Avadel cannot argue that Dr. Rainey's methodology is flawed by "substituting its own recomputation to arrive at a lower figure." *TWM Mfg. Co., Inc. v. Dura Corp.*, 789 F.2d 895, 899 (Fed. Cir. 1986) ("That argument does not show error, but merely indicates the damages an infringer-appellate would prefer to pay.").

In short, this case is a classic example of "competing experts" and Avadel's motion should be denied. *See Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1394 (Fed. Cir. 2003). The "question of whether an expert opinion is correct is generally a question for the factfinder, not the court." *Summit 6*, 802 F.3d at 1296, 1299 ("disputes over the expert's credibility or

accuracy of the underlying facts are for the jury"). And any issues that Avadel has with Dr. Rainey's methodology and rates are properly addressed by cross-examination. *Id.* at 1296, 1299.

    **B.    Dr. Rainey's Opinions Do Not Rely On** ▬▬▬▬

Avadel argues that Dr. Rainey's opinions are the result of ▬▬▬▬ and grounded in ▬▬▬▬

▬▬▬▬ Br. 32, 33. This argument is unsupported.

*First*, as discussed above, Dr. Rainey's methodology is sound and relies on case-specific facts impacting the hypothetical negotiation, not a ▬▬▬▬ Importantly, even if the jury agrees with Dr. Rainey's analysis (which it should), Avadel's ▬▬▬▬

A2808, ¶ 15; A2811, ¶ 22; A2819-A2820, ¶ 42; A2840-A2841, ¶ 88. ▬▬▬▬

▬▬▬▬ A2734-A2738, ¶¶ 90-96. In contrast, ▬▬▬▬

▬▬▬▬ A2824, ¶ 50. Thus, Dr. Rainey's royalty rates do not amount to ▬▬▬▬

*Second*, Dr. Rainey's opinions do not rely on ▬▬▬▬ (Br. 32) as Avadel asserts. Dr. Rainey plainly testified that in his analysis the ▬▬▬▬ A2918-A2919, 184:15-185:5; A2907, 137:2-22 ▬▬▬▬

▬▬▬▬ And Dr. Rainey

made clear that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

A2907, 140:9-24; *id.* at 139:14-21 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

### C. Avadel's Cases Are Inapposite And Irrelevant To The Facts Here

None of Avadel's cited cases support preclusion. Dr. Rainey's opinions are not at all "similar" to the opinion that was excluded in *Nordock Inc. v. Sys. Inc.*, 2013 WL 989864 (E.D. Wisc. Mar. 13, 2103). In *Nordock*, the expert merely listed the *Georgia-Pacific* factors verbatim and concluded that "a reasonable royalty on the sales of dock levelers would be 100 percent of Nordock's lost sales." A3050-A3051, No. 11-118, D.I. 86 at 10-11. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ A2810, fn.26; A2792, Exhibit 5; A2718, ¶ 40; A2718, ¶¶ 43-44. That is not, however, the analysis Dr. Rainey conducted.

In *LaserDynamics, Inc. v. Quanta Computer, Inc*., 694 F.3d 51, 77-78 (Fed. Cir. 2012), the Federal Circuit held that the court erred in admitting a settlement agreement because there were 29 license agreements for the patents at-issue, the majority of which were arms-length agreements. In *M2M Sols. LLC v. Enfora, Inc.*, 167 F. Supp. 3d 665, 677-78 (D. Del. 2016), the court excluded an expert's royalty opinion because it was based on settlement agreements that were neither technically nor economically comparable. In *MiiCs & Partners, Inc. v. Funai Elec. Co.*, No. 14-804, 2017 WL 6268072, at *4 (D. Del. Dec. 7, 2017), the court determined that it was improper for an expert to rely on "a single, unaccepted offer for a license" to a portfolio of 360 patents (rather than the patent at-issue) and where the offeror was a different party than the licensor at the hypothetical negotiation. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Finally, in *In re Koninklijke Philips Pat. Litig.*, No. 18-01885, 2020 WL 7398647, at *8 (N.D. Cal. Apr. 13, 2020), the court precluded expert testimony that relied on advertised royalty rates from the patentee's licensing program that "bundle[d] patents by feature." The court held that the rates were mere offers, "non-case specific data," and that the expert failed to show comparability and "fail[ed] to meaningfully consider the *Georgia-Pacific* factors." *Id*. at *8-*9. In stark contrast, Dr. Rainey's royalty rates are based on case-specific data, and he provides detailed analyses of each *Georgia-Pacific* factor to arrive at his opinions.

### III.  CONCLUSION

For the foregoing reasons, the Court should deny Avadel's *Daubert* motion and allow Dr. Rainey to present the entirety of his damages opinions and analysis to the jury.

- 9 -

Dated: December 15, 2023

OF COUNSEL:

F. Dominic Cerrito
Eric C. Stops
Evangeline Shih
Andrew S. Chalson
Gabriel P. Brier
Frank C. Calvosa
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY  10010
(212) 849-7000

Respectfully submitted,

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

/s/ Jeremy A. Tigan

Jack B. Blumenfeld (#1014)
Jeremy A. Tigan (#5239)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
jtigan@morrisnichols.com

*Attorneys for Plaintiffs*
*Jazz Pharmaceuticals, Inc. and*
*Jazz Pharmaceuticals Ireland Limited*

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 15, 2023, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on December 15, 2023, upon the following in the manner indicated:

| | |
|---|---|
| Daniel M. Silver, Esquire<br>Alexandra M. Joyce, Esquire<br>MCCARTER & ENGLISH, LLP<br>Renaissance Centre<br>405 N. King Street, 8th Floor<br>Wilmington, DE  19801<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |
| Kenneth G. Schuler, Esquire<br>Marc N. Zubick, Esquire<br>Alex Grabowski, Esquire<br>Sarah W. Wang, Esquire<br>LATHAM & WATKINS LLP<br>330 North Wabash Avenue, Suite 2800<br>Chicago, IL  60611<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |
| Herman H. Yue, Esquire<br>Franco Benyamin, Esquire<br>LATHAM & WATKINS LLP<br>1271 Avenue of the Americas<br>New York, NY  10020<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |
| Audra Sawyer, Esquire<br>Alan J. Devlin, Esquire<br>Ian Conner, Esquire<br>Denise Laspina, Esquire<br>LATHAM & WATKINS LLP<br>555 Eleventh Street, NW, Suite 1000<br>Washington, D.C.  20004-1304<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |

| | |
|---|---|
| Daralyn J. Durie, Esquire<br>Eric P. Berger, Esquire<br>Rebecca E. Weires, Esquire<br>Adam R. Brausa, Esquire<br>Tannyr Pasvantis, Esquire<br>MORRISON & FOERSTER LLP<br>425 Market Street<br>San Francisco, CA  94105<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |
| Kira A. Davis, Esquire<br>Henry Huttinger, Esquire<br>Katherine E. McNutt, Esquire<br>Rose S. Lee, Esquire<br>MORRISON & FOERSTER LLP<br>707 Wilshire Boulevard<br>Los Angeles, CA  90017<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |
| David F. McGowan, Esquire<br>David F. Kowalski, Esquire<br>MORRISON & FOERSTER LLP<br>12531 High Bluff Drive, Suite 100<br>San Diego, CA  92130<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |
| Andrew T. Jones, Esquire<br>MORRISON & FOERSTER LLP<br>2100 L Street, NW, Suite 900<br>Washington, D.C.  20037<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |

*/s/ Jeremy A. Tigan*

Jeremy A. Tigan (#5239)