**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| JAZZ PHARMACEUTICALS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>AVADEL CNS PHARMACEUTICALS, LLC,<br><br>Defendant. | C.A. No. 21-691-GBW<br><br>**PUBLIC VERSION** |
| JAZZ PHARMACEUTICALS, INC., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>AVADEL CNS PHARMACEUTICALS, LLC,<br><br>Defendant. | C.A. No. 21-1138-GBW<br><br>**PUBLIC VERSION** |
| JAZZ PHARMACEUTICALS, INC., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>AVADEL CNS PHARMACEUTICALS, LLC,<br><br>Defendant. | C.A. No. 21-1594-GBW<br><br>**PUBLIC VERSION** |

**REPLY BRIEF IN SUPPORT OF PLAINTIFFS' MOTION TO EXCLUDE
EXERT TESTIMONY OF DR. ALEXANDER KLIBANOV AND
DR. CARLO GIOVANNI TRAVERSO REGARDING
<u>AVADEL'S INFRINGEMENT OF THE SUSTAINED RELEASE PATENTS</u>**

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ..................................................................................................................1

II. ARGUMENT ........................................................................................................................2

    A. Avadel's Experts' "In The Body" Opinions Contradict The *Markman* Opinion ..................................................................................................................2

    B. Avadel's Counters To Jazz's Motion Contradict The *Markman* Opinion ...............3

    C. The Court Should Grant The Full Scope Of Jazz's Motion....................................6

III. CONCLUSION.....................................................................................................................7

## **TABLE OF AUTHORITIES**

**Page**

### **Cases**

*CAO Lighting, Inc. v. Gen. Elec. Co.*,
 No. 20-681, 2023 WL 1930354 (D. Del. Jan. 30, 2023) ............................................................3

*Minerva Surgical, Inc. v. Hologic, Inc.*,
 No. 18-217, 2021 WL 3048447 (D. Del. July 20, 2021) ..........................................................2

*Rsch. Found. of State Univ. of N.Y. v. Mylan Pharms., Inc.*,
 No. 09-184, 2010 WL 11475865 (D. Del. July 6, 2010) ..........................................................4

*Wilson Sporting Goods Co. v. Hillerich & Bradsby Co.*,
 442 F.3d 1322 (Fed. Cir. 2006)..............................................................................................6, 7

I. INTRODUCTION

Drs. Klibanov and Traverso's alleged non-infringement position is the construction that Avadel offered, and that the Court rejected, during *Markman*:

| Avadel's Rejected Construction | Avadel's Experts' Non-Infringement Opinion |
|---|---|
| "A gradual, extended release, *as opposed to releasing a majority of the drug within an hour upon exposure to intestinal pH*." D.I. 229 at 4 (emphasis added). | "[T]esting confirms that release of the drug from the controlled release pellets tested alone (rather than as part of the formulation) occurs *rapidly upon exposure to pH of 6.8, and not 'over a period of time.'* Consistent with the testing reported in Avadel's NDA, the controlled release pellets *release all of their sodium oxybate in less than one hour after exposure to pH 6.8 [simulated intestinal fluid]*." A0183, ¶ 67 (emphasis added). |

The Court's *Markman* Opinion repeatedly rejected the "pH-dependent ('as opposed to releasing a majority of the drug within an hour upon exposure to intestinal pH') drug release characteristics" limitation that Avadel attempted to improperly import into the Sustained Release Patents' claims. D.I. 229 at 5. The Court first rejected it based on "the specific" "dissolution profile measured in deionized water" recited in the claims. *Id.* The Court next rejected it based on the specification's discussion of the distinct "claimed dissolution profile measured in deionized water" and the "'simulated intestinal fluid' . . . media [that] was *not* recited in the claims." *Id.* at 6 (emphasis added). And the Court further rejected it because the file history did not support Avadel's argument that Jazz disclaimed "not 'releasing a majority of the drug within an hour upon exposure to intestinal pH.'" *Id.* at 7, 8. Instead, the file history demonstrated that "Jazz consistently identified the necessary features of its invention as the DI water-based *in vitro* release profile and a sustained release coating comprised of certain co-polymers." *Id.* at 8.

Notwithstanding, Avadel insists its experts' opinions are proper because the Court allegedly did not rule there was "any particular testing methodology to determine whether a release is 'not immediate' or happens 'over a period of time.'" C.A. No. 21-691, D.I. 418

1

("Opp.") 37. As explained below, Avadel willfully blinds itself to the *Markman* Opinion; its position lacks merit.

## II. ARGUMENT

### A. Avadel's Experts' "In The Body" Opinions Contradict The *Markman* Opinion

Avadel states that Drs. Klibanov and Traverso's opinions "are that LUMRYZ lacks a 'sustained release portion' because there is no portion that releases over a period of time *in the body*—instead, all portions release their oxybate all at once." Opp. 40 (emphasis added). Avadel's own characterization proves the premise of Jazz's motion. Avadel's experts equate "in the body" with buffered simulated intestinal fluid. A0175-A0176, ¶ 59. This is Avadel's construction that the Court rejected during *Markman*. *See, e.g.*, D.I. 229 at 4 (Avadel's proposed construction relying on "exposure to intestinal pH"); *id.* at 6 (the Court finding that, "[w]hile the '488 patent's specification provides examples of other dissolution media that could be employed in certain embodiments ( e.g., *'simulated intestinal fluid,'* '488 patent at 8:4), *that media was not recited in the claims*, undermining Avadel's effort to include a limitation based on the sustained release portion's *exposure to intestinal pH*.") (emphasis added).

Jazz's motion should be granted on this basis alone[1]; Avadel does not contest that "[t]he opinions of a patent infringement expert who applies an erroneous claim construction are inadmissible." *Minerva Surgical, Inc. v. Hologic, Inc.*, No. 18-217, 2021 WL 3048447, at *6 (D.

---

[1] Avadel argues that its experts' improper opinions for the Sustained Release Patents should be permitted because they "will be heard by the jury in any event" for the '079 Patent. Opp. 41. But the '079 Patent, unlike the Sustained Release Patents, does *not* have claims specifically reciting *in vitro* deionized water dissolution profiles. The '079 Patent is also subject to a different claim construction. *See* D.I. 229 at 9-11. Different claims, in a different patent, with a different specification and different file history, and with a differently construed term, do not permit Avadel to offer opinions contrary to the Court's claim construction for the Sustained Release Patents' claims.

Del. July 20, 2021). In fact, Avadel fails to address any of Jazz's cited legal authorities, let alone distinguish this Court's recent holding in *CAO Lighting*, where the Court excluded "non-infringement opinions . . . based on a construction of the claim term that is contrary to the Court's claim construction." *CAO Lighting, Inc. v. Gen. Elec. Co.*, No. 20-681, 2023 WL 1930354, at *3 (D. Del. Jan. 30, 2023).[2] Exclusion is likewise warranted here.

### B. Avadel's Counters To Jazz's Motion Contradict The *Markman* Opinion

Avadel offers several reasons why its experts are purportedly not blatantly disregarding the Court's *Markman* Opinion. Each lacks merit.

*First*, Avadel argues that the deionized water testing conditions are "plainly not found in the Court's construction of 'sustained release portion,'" and that the "Sustained Release patents disclose a variety of different testing conditions, including 'purified water, 0.1 N HCl, simulated intestinal fluid, and others.'" Opp. 44-45. Avadel pretends the Court's *Markman* Opinion does not exist. Therein, the Court specifically addressed the "different testing conditions" disclosed in the Sustained Release Patents' specification. And the Court could not have been clearer. The "*claimed dissolution profile*" is "measured in *deionized water*." D.I. 229 at 6 (emphasis added). And "[w]hile the '488 patent's specification provides examples of other dissolution media . . . (e.g., '*simulated intestinal fluid*,' '488 patent at 8:4), *that media was not recited in the claims*." *Id.* Avadel's experts cannot be permitted to contradict this Court's ruling.

*Second*, Avadel argues that a piece of extrinsic evidence (a dictionary definition) cited by

---

[2] Avadel will not offer Dr. Klibanov's opinions on the patents' prosecution history. Opp. 42-43. While Avadel appears to belatedly agree that testimony grounded in the prosecution history to discern the meaning of a claim is properly excluded from presentation to the jury (*see* D.I. 390 at 5), it necessarily undermines Dr. Klibanov's opinions which significantly depended on what allegedly "a POSA would have understood from Jazz's amendments and arguments during prosecution." *See, e.g.*, A0167-A0171, ¶¶ 48-52; A0187-A0193, ¶¶ 75-84.

3

the Court supposedly "mandat[es] an inquiry into which testing conditions would best approximate [sustained] release." Opp. 45. Avadel further argues, citing *Research Foundation*, that Jazz never advanced a position during *Markman* that the claims were limited to deionized water *in vitro* release profiles. *Id.* Again, Avadel is willfully blind to the Court's *Markman* Opinion. The Court expressly adopted Jazz's position that "Jazz consistently identified the necessary features of its invention as the DI water-based *in vitro* release profile and a sustained release coating comprised of certain co-polymers." D.I. 229 at 8. The Court also rejected Avadel's construction based on "exposure to intestinal pH." *Id.* at 4. Thus, this case is nothing like *Research Foundation* where the party "did not at any point during the claim construction process state or suggest that the terms on which its argument relies . . . were limited to in vitro amounts." *Rsch. Found. of State Univ. of N.Y. v. Mylan Pharms., Inc.*, No. 09-184, 2010 WL 11475865, at *6 (D. Del. July 6, 2010). The Court's citation of extrinsic evidence as further support for its construction does not change the Court's finding that *all intrinsic evidence* (the claims, specification, and file history) support that the claims use only the expressly-recited deionized water media as the test conditions for a "sustained release portion." *See supra* at 1.

*Third*, Avadel argues that Jazz's position "would improperly collapse two claim terms—the 'sustained release portion' and the deionized water testing—into one," and that "the 'sustained release' and 'release' limitations are separate and distinct is further confirmed with the claims' use of the adjunctive 'and' between the pertinent limitations." Opp. 45-46. But the language of the claims demonstrates why Avadel's argument fails. As the claims clearly show, there are two necessary requirements for the "sustained release portion"—one structural and the other functional. The structural requirement is that "the sustained release portion comprises a functional coating [of about 20-50% methacrylic acid-methyl methacrylate ("MAMM") co-

4

polymers] and a core, the functional coating is deposited over the core." *Id.* at 46 (quoting A0063-A0064, Claim 1 of the '885 Patent). The functional requirement is that "the sustained release portion releases" a certain dissolution profile in "deionized water." *Id.* "And" ties those two requirements of the "sustained release portion" together. At bottom, that there are two separate requirements shows that a given formulation that meets the deionized water dissolution release profile is not an infringing "sustained release portion" if any of the claimed structural requirements are lacking.

Jazz's position is consistent with the Court's finding that "Jazz consistently identified the necessary features of its invention as the DI water-based *in vitro* release profile *and* a sustained release coating comprised of certain co-polymers." D.I. 229 at 8 (emphasis added). It is also consistent with Dr. Little's testimony that Avadel cites. Opp. 46. Dr. Little explained that "the Court considered the structure of the particle, it considered the release profile of the particle. There was a number of things that the Court considered when construing it that way, so that's what I applied." A2416, 52:2-10. Avadel's attempt to mischaracterize that testimony fails.

*Fourth*, Avadel argues that Jazz's position cannot be correct because an "immediate release formulation" would also supposedly meet the "sustained release portion" because it would exhibit the claimed deionized water dissolution release profile. Opp. 46-47. Avadel's position again ignores that the deionized water release profile is *not the sole requirement* for the "sustained release portion." Indeed, immediately prior to the testimony Avadel cites from Dr. Little (*id.* at 46), Dr. Little was asked "Do you believe that the sustained release element is one that is satisfied by any portion of a formulation that satisfies the release language of the claims? A2416, 51:16-52:1. Dr. Little responded: "Well, I think the Court considered a number of things. I think that the release portion is one of them. I think explicit in the construction is that

5

*it's also not immediate release, so there's more than that*." *Id.* (emphasis added). As explained in response to Avadel's preceding argument, the Court held that the "sustained release portion" is "the portion of the formulation that is *not immediate release*." D.I. 229 at 4-5 (emphasis added). The express wording of the asserted claims demonstrates that the sustained release portion, unlike the immediate release portion, also requires a core and MAMM functional coating (the structural requirement). Opp. 46 (quoting A0063-A0064, Claim 1 of the '885 Patent); *see also* A0252-A0254, ¶¶ 24-27. And as the Court found, it is the combined structural and functional requirements that are "necessary features of [Jazz's] invention." D.I. 229 at 8.

### C. The Court Should Grant The Full Scope Of Jazz's Motion

Avadel argues that "Jazz offers no basis to exclude paragraphs 42-44, 53-54, 59-66, 68-74" of Dr. Klibanov's report because Jazz's Opening Brief does not discuss each paragraph individually. Opp. 41-42. But Avadel overlooks that all of Paragraphs 42-84 of Dr. Klibanov's report improperly use the intestinal pH limitation that the Court rejected during *Markman*.

Avadel also argues that, even if the Court already ruled that the claimed testing condition is deionized water (which it did), Drs. Klibanov and Traverso should still be permitted to offer their intestinal pH dissolution media opinions because "deionized water's pH ranges from pH 5.5, below the 'trigger pH' where LUMRYZ would release drug, to pH 7.5, well above the 'trigger pH.'" Opp. 47-48. But no expert has offered this opinion as an alleged basis for non-infringement. Instead, the one portion of Dr. Klibanov's report that Avadel cites for this point (*id.* at 42 (citing A0175-A0176, ¶ 59)) takes the position that unbuffered deionized water testing "is not an appropriate media for dissolution testing of the LUMRYZ controlled release pellets because it has no appreciable buffering capacity" and, therefore, the buffered simulated intestinal fluid media should be used. As explained in Jazz's Opening Brief (and which Avadel does not address), *Wilson Sporting Goods Co. v. Hillerich & Bradsby Co.*, 442 F.3d 1322, 1331 (Fed. Cir.

6

2006) holds that "a court may not use the accused product or process as a form of extrinsic evidence to supply limitations for patent claim language." C.A. No. 21-691, D.I. 390 at 6. That is undoubtedly what Drs. Klibanov and Traverso seek to do. What they believe is supposedly appropriate/inappropriate for testing of *the accused product* cannot be used to change the deionized water dissolution conditions expressly recited and required by the Sustained Release Patents' asserted claims. *Id.*

### III.   CONCLUSION

For the foregoing reasons and those set forth in Jazz's Opening Brief (C.A. No. 21-691, D.I. 390), the Court should exclude Drs. Klibanov's and Traverso's opinions regarding Avadel's infringement of the "sustained release portion" claim element for the Sustained Release Patents.

| | |
|---|---|
| Dated: December 22, 2023 | Respectfully submitted, |
| | |
| | MORRIS, NICHOLS, ARSHT & TUNNELL LLP |
| OF COUNSEL: | /s/ *Jeremy A. Tigan* |
| | _____ |
| F. Dominic Cerrito | Jack B. Blumenfeld (#1014) |
| Eric C. Stops | Jeremy A. Tigan (#5239) |
| Evangeline Shih | 1201 North Market Street |
| Andrew S. Chalson | P.O. Box 1347 |
| Gabriel P. Brier | Wilmington, DE  19899 |
| Frank C. Calvosa | (302) 658-9200 |
| QUINN EMANUEL URQUHART | jblumenfeld@morrisnichols.com |
| & SULLIVAN, LLP | jtigan@morrisnichols.com |
| 51 Madison Avenue, 22nd Floor | |
| New York, NY  10010 | *Attorneys for Plaintiffs* |
| (212) 849-7000 | *Jazz Pharmaceuticals, Inc. and* |
| | *Jazz Pharmaceuticals Ireland Limited* |