

**Daniel M. Silver**
Wilmington Office Managing Partner

T. 302-984-6331
F. 302-691-1260

dsilver@mccarter.com

McCarter & English, LLP

Renaissance Centre
405 N. King Street, 8th Floor
Wilmington, DE 19801-3717

www.mccarter.com

July 30, 2024

**VIA CM/ECF AND HAND DELIVERY**

The Honorable Gregory B. Williams
U.S. District Court for the District of Delaware
J. Caleb Boggs Federal Building
844 N. King Street
Wilmington, DE 19801-3555

Re: *Jazz Pharms., Inc., et al. v. Avadel CNS Pharms., LLC*,
C.A. Nos. 21-691-GBW, 21-1138-GBW, 21-1594-GBW

Dear Judge Williams:

We write on behalf of Avadel to bring to the Court's attention recent sworn testimony provided by Jazz's corporate witness Mr. Ernie Ross in the pending antitrust case that contradicts arguments presented to the Court by Jazz in support of its motion for a permanent injunction against sales of LUMRYZ. That testimony confirms that, as Avadel previously showed in its opposition to Jazz's motion, Jazz has repeatedly contradicted its own allegations of irreparable harm (*see* D.I. 601 at 13-15).[1]

As your Honor may recall, Avadel filed antitrust counterclaims against Jazz in C.A. No. 22-941 because Jazz's improper listing of U.S. Patent No. 8,731,963 in the FDA's Orange Book—and repeated refusal to delist it—had unlawfully delayed the timely approval of LUMRYZ. As part of that action, on July 23, 2024, Avadel deposed Mr. Ernie Ross, Jazz's Senior Vice President of Market Access in the United States, who was testifying in part as a Rule 30(b)(6) witness. Ross Tr. 11:22-12:6 (excerpts attached hereto as Exhibit A).

Mr. Ross's testimony in the antitrust case cannot be reconciled with the arguments that Jazz advanced in the patent cases. In the patent cases, Jazz claimed to be the "exclusive market leader" in sleep, and it complained that Jazz would be irreparably harmed if it could not "market to physicians and patients that Jazz alone is the market leader." D.I. 587 at 8. Jazz even went so far as to claim that LUMRYZ was essentially Xywav's only competitor – Jazz argued that for Xywav, not even generic Xyrem competed with Xywav. *See* June 6, 2024 Permanent Injunction Hr'g Tr. at 99:20-22 ("THE COURT: Does generic Xyrem compete with Xywav? MR. CERRITO: No, they are not substitutable.").

Mr. Ross, however, paints a very different picture:



---

[1] "D.I." citations refer to docket entries in C.A. No. 21-691-GBW unless otherwise noted.

ME1 49284012v.1

July 30, 2024
Page 2



Ross Tr. at 97:12-105:3 (emphasis added and objections omitted).[2]

      Jazz cannot disclaim the existence of any significant competition from LUMRYZ in the antitrust case while insisting in this patent cases that sales of LUMRYZ must be permanently enjoined because they pose such a competitive threat to Jazz's oxybate franchise as to inflict irreparable harm. Regardless of which version of the facts that Jazz actually believes, these contradictions further justify denying Jazz its requested permanent injunction, for either narcolepsy or IH. Notably, the generic versions of Xyrem that Jazz now admits are competitors to not just Xyrem but also Xywav are ones as to which Jazz has granted patent licenses, including to patents covering Xywav. *See* D.I. 601 at 15-16 (Avadel opp'n brief); D.I. 610 at 4 (Jazz reply brief, conceding that Jazz licensed "patents covering Xyrem **and Xywav**" to generics (emphasis added)).

Respectfully submitted,

*/s/ Daniel M. Silver*

Daniel M. Silver (#4758)

cc:    All counsel of record (via CM/ECF and E-Mail)

---

[2] The parties previously agreed to the cross-use of confidential information in the patent and antitrust cases. *See* C.A. 22-941, D.I. 36 at § 4.e.