# MORRIS, NICHOLS, ARSHT & TUNNELL LLP

1201 NORTH MARKET STREET
P.O. BOX 1347
WILMINGTON, DELAWARE 19899-1347

(302) 658-9200
(302) 658-3989 FAX

JEREMY A. TIGAN
(302) 351-9106
jtigan@morrisnichols.com

July 31, 2024                      **PUBLIC VERSION**

The Honorable Gregory B. Williams        *VIA ELECTRONIC FILING*
United States District Court
  for the District of Delaware            **Confidential Version Filed: July 31, 2024**
844 North King Street                        **Public Version Filed: August 13, 2024**
Wilmington, DE  19801-3555

        Re:    *Jazz Pharms., Inc., et al. v. Avadel CNS Pharms., LLC,*
                 C. A. Nos. 21-691, 21-1138, 21-1594 (GBW)

Dear Judge Williams,

       We write on behalf of Jazz in response to Avadel's July 30, 2024 letter that Avadel, again, filed without seeking leave of Court.  *See* D.I. 659.[1]  This is the second time that Avadel violated the Court's direction to *not* submit additional briefing after the June 4 injunction hearing.  *See* Tr. 126-27; *see also* D.I. 650 at 1; D. Del L. Rule 7.1.2(b).  But this time Avadel goes even further.  It took discovery in another case (C.A. No. 22-941) for use in this case after successfully opposing Jazz's request to take discovery on injunction issues and depose Avadel's injunction-related declarants.  *See* D.I. 584 at 8 ("Avadel does not believe that any additional discovery is necessary or appropriate in connection with Jazz's request for a permanent injunction or ongoing royalty."); D.I. 585 at 2 ("The Court is not re-opening discovery in this action.").  Similar to its last improper submission, there is no doubt that Avadel's second improper submission should be stricken.  Further, Avadel should be directed to not further violate the Court's direction and order (and Avadel's own advocated position) that there should be no further briefing and discovery related to Jazz's injunction motion.  If not, Jazz fears that the Court and Jazz will be forced to further expend resources dealing with Avadel's baseless arguments as depositions in the antitrust action (and perhaps the trade secret action) continue.

       However, Jazz responds below because Avadel's letter is misleading (to say the least) and further exposes the weakness of Avadel's opposition to Jazz's requested injunction.  Further, based on Avadel's opposition to Jazz's irreparable harm argument, Avadel should immediately strike allegations from (and voluntarily dismiss) its antitrust counterclaims in C.A. 22-941.

---

[1]  Docket entries cited in this letter are to C.A. No. 21-691 unless otherwise identified.

The Honorable Gregory B. Williams
July 31, 2024
Page 2

Avadel argues that "Jazz's corporate witness" in the antitrust action provided testimony that contradicts Jazz's irreparable harm argument in this case regarding Avadel being a direct competitor of Jazz that is taking market share away from Jazz's oxybate products. Avadel's argument is wrong for several reasons.

*First*, Avadel fails to inform the Court (and did not provide the Court with the portions of the transcript that show) that Mr. Ross was "Jazz's corporate witness" *only* "for pricing and [insurance] payer related matters." Ex. 1 at 31:10-33:9, 113:11-114:8. Thus, Mr. Ross was *not* "Jazz's corporate witness" on whether Lumryz is a competitor or competitive threat to Jazz's business. Avadel's suggestion otherwise is incredible given that the objections and discussion between counsel that Avadel omitted from its letter show Avadel's counsel repeatedly making clear that he was asking Mr. Ross the questions "in his individual capacity." Ex. A at 96:23-97:2, 98:14-21. Even so, Jazz's counsel objected to the line of questioning as outside the scope of the 30(b)(6) testimony to avoid any ambiguity. *See generally* Ex. A at 97:12-105:3. Avadel never challenged those objections. *See id.*

*Second*, Avadel fails to provide the Court with proper context for Mr. Ross's testimony regarding Lumryz and other narcolepsy products being within the same "competitive market basket." *See id.* As Mr. Ross explained (in another portion of the transcript not submitted to the Court by Avadel), ███████████████████████████████████████████████████████████████████████████████████████████████████ Ex. 1 at 19:21-20:2 (emphasis added). Thus, as explained further below, Mr. Ross's testimony is irrelevant to the irreparable harm directly caused by Avadel's infringing conduct to Jazz's oxybate business. And in any event, Mr. Ross made clear (in the non-bolded portion of his testimony in Avadel's letter) that ████████████████████████████████████████ Ex. A at 103:8-19; *see also id.* at 104:5-14. And none of Mr. Ross's testimony undermines Jazz's argument regarding its position as the market leader in sleep.

*Third*, Avadel invites the Court to commit reversible error when it suggests that multiple competitors in the same market undermines Jazz's irreparable harm argument. The Federal Circuit has explained that, "[w]hile the existence of a two-player market may well serve as a substantial ground for *granting* an injunction—e.g., because it creates an inference that an infringing sale amounts to a lost sale for the patentee—the converse is not automatically true." *Robert Bosch Llc v. Pylon Mfg. Corp..*, 659 F.3d 1142, 1151 (Fed. Cir. 2011). The Federal Circuit has thus held that a district court's reliance on the "presence of additional competitors" in its finding of no irreparable harm was "a clear error of judgment" particularly in light of evidence including "the parties' direct competition" and "loss in market share and access to potential customers resulting from [the defendant's] introduction of infringing [products]." *Id.* at 1150-1151. Here, Jazz has presented unrebutted evidence—originating from both parties—showing that Avadel is directly taking market share from Jazz's oxybate products. *See, e.g.*, D.I. 587 at 3-5; D.I. 610 at 3-4.[2]

---

[2] Avadel also repeats its incorrect argument, which Jazz already addressed (*see* D.I. 610 at 4) that Jazz's licensing of patents—unrelated to those asserted against Avadel in this litigation—affects

*Fourth*, Avadel incorrectly argues that Jazz is taking inconsistent positions in this case and the antitrust case. But as explained above, the fact that there are multiple competitors in the same market does not affect Jazz's irreparable harm argument under Federal Circuit law (which governs patent matters). The same cannot be said for Avadel's lack of ability to show monopoly power under Third Circuit law (which governs antitrust matters). As the Third Circuit explained, the monopoly power analysis requires consideration of "[t]he scope of the market." *Mylan Pharms. Inc. v. Warner Chilcott Public Ltd.*, 838 F.3d 421, 435 (3d Cir. 2016) (internal quotation and citation omitted). "To determine if two products are in the same market, [the Third Circuit] ask[s] if they are readily substitutable for one another, an inquiry that requires [the court] to assess the reasonable interchangeability of use between a product and its substitute." *Id.* (internal quotations omitted). As the Third Circuit has held, "[t]he scope of the market" for pharmaceuticals is not limited to drugs with the same active ingredient—as Avadel advocates for—but instead includes other products used to treat the same condition. *See id* at 435-36. Thus, although there are many products in the scope of the market, which precludes Avadel's ability to prove market power in the antitrust case, those other competitors do not alter the direct, unrebutted evidence in the patent case that Jazz is losing market share to its direct competitor Avadel due to Avadel's infringing conduct, which irreparably harms Jazz.

*Fifth and finally*, it is Avadel, not Jazz, that is taking inconsistent positions between this case and the antitrust case. Avadel's position in the antitrust case is that Lumryz is an "*Existential Threat*" to Jazz. C.A. No. 22-941, D.I. 14 at 22 (emphasis added). While the pleadings are too many to call out one-by-one, Avadel cannot seriously oppose Jazz's irreparable harm argument in this case without implicitly admitting the baselessness of its claims in the antitrust case because Avadel repeatedly pleads in the antitrust case that only Avadel is a direct competitor and competitive threat to Jazz's products. *See, e.g.*, *id.* at ¶ 42 (pleading that Avadel is a "mortal competitive threat facing Jazz's oxybate" products); *id.* at ¶ 48 ("Jazz is particularly concerned about competition from Avadel."); *id.* at ¶ 73 ("The competitive threat posed by Flamel/Avadel grew with each passing year."); *id.* at ¶ 75 ("Avadel's FT218 product posed such an acute risk to XYREM."); *id.* at ¶ 105 ("[N]either pitolisant nor any other FDA-approved non-oxybate drugs competitively constrain Jazz in selling oxybate."); *id.* at ¶ 115 ("LUMRYZ's introduction would have brought desperately needed competition . . . pressuring Jazz to reduce prices in order to preserve sales . . . ."); *id.* at ¶ 116 ("Had Avadel been able to launch LUMRYZ, it would have forced Jazz to reduce prices to attempt to hold onto some market share."); *id.* at ¶ 143 ("Jazz fears competition not from the sale of WPAs like pitolisant, but from other oxybate drugs, particularly a superior, once-at-bedtime, extended-release version of the kind developed by Avadel.").

For these reasons, and those Jazz previously presented to the Court, Jazz's requested injunction should be granted, and Avadel should be directed to not further violate the Court's order against further briefing on that issue.

---

Jazz's irreparable harm argument. To be clear, Jazz has never licensed rights to sell a generic Xywav product, despite Avadel's repeated attempts to convince the Court otherwise.

Case 1:21-cv-00691-GBW   Document 663   Filed 08/13/24   Page 4 of 4 PageID #: 35166

The Honorable Gregory B. Williams
July 31, 2024
Page 4

        Respectfully,

        */s/ Jeremy A. Tigan*

        Jeremy A. Tigan (#5239)

JAT/rah
Enclosure
cc:    Clerk of the Court (via hand delivery)
       All Counsel of Record (via e-mail)